U. Fujita & Co. et al. *v.* United States (No. 4077)[1]

[1] T. D. 49611.

United States Court of Customs and Patent Appeals, February 7, 1938

*Lawrence & Tuttle* (*Charles F. Lawrence* and *Frank L. Lawrence* of counsel) for appellants.

*Joseph R. Jackson*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument December 8, 1937, by Mr. Frank L. Lawrence and Mr. Donohue]

Before BLAND, Acting Presiding Judge, and HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court :[2]

This appeal from a judgment of the United States Customs Court brings before us four protests, three of which were dismissed by that court as being legally insufficient—two (Nos. 551525–G and 552561–G) on motion by counsel for the Government, and one (No. 586142–G)

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

*sua sponte.* The issue raised by the appeal in the fourth protest, No. 669121–G, involves the proper classification of certain "door knockers," which, together with many other imported articles, were stipulated by counsel for the parties to be composed "in chief value of base metal not plated with gold or silver, and not composed in any part of aluminum or of iron or steel enameled or glazed with vitreous glasses," and "used chiefly on the table in the kitchen or in the household, for utilitarian purposes."

The "door knockers" were assessed for duty by the collector at the port of San Francisco at 45 per centum ad valorem as manufactures of metal, not specially provided for, under paragraph 397 of the Tariff Act of 1930. They are claimed by appellants to be properly dutiable at 40 per centum ad valorem under the provisions for household utensils contained in paragraph 339 of that act.

The paragraphs, so far as pertinent, read:

PAR. 339. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: * * * composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem * * *.

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

The trial court was of opinion that the involved "door knockers" were "door fixtures and not household utensils any more than door knobs would be household utensils."

Although there is nothing of record to indicate the character of the involved articles other than the quoted excerpt from the stipulation on which the cause was submitted to the trial court, we assume that such articles were designed to be fastened to doors (it is so indicated in the brief of counsel for appellants), and, in view of the stipulation that they are used in the household, that, when in use, they are attached to doors inside the house. Whether they are temporarily or permanently attached, does not appear.

Counsel for appellants contend that, although the "door knockers" in question are, when in use, fastened to doors, they are, nevertheless, household utensils; that they are similar to "can-openers, boot-scrapers, and built-in refrigerators"; that, in order to determine whether they are utensils within the meaning of that term as used in paragraph 339, *supra*, the test should be the "manner of use rather than * * * [their] location"; and that as it was stipulated by the parties that they were "used chiefly on the table in the kitchen or in the household, for utilitarian purposes," the trial court was not justified in holding that they were not household utensils within the purview of paragraph 339, *supra*.

We find nothing to indicate that counsel for the parties intended to stipulate that the involved articles were *household utensils*, within the statutory meaning of that term. However, had counsel so intended, the trial court was not bound to hold, as a matter of law, that the articles in question were dutiable as household utensils under paragraph 339, *supra*.

In the case of *Frank P. Dow Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816, this court, in holding that certain vacuum cleaners and electric floor polishers were dutiable as household utensils under paragraph 339 of the Tariff Act of 1922 (the predecessor of paragraph 339, *supra*, here under consideration), quoted definitions of the terms "utensil," "instrument," and "implement" from various lexicographers and observed that those terms might be and frequently were used interchangeably, and that the term "household utensils," as used in paragraph 339, *supra*, was intended by the Congress to be given a broad interpretation; that is, that it was intended to cover all household utensils, chiefly so used, not otherwise specially provided for. However, considering the context and the legislative history of paragraph 339, *supra*, and the dictionary definitions of the terms "utensil," "instrument," and "implement," we are unable to accept the view that it was the purpose of the Congress to include within that paragraph articles designed to be, and, when in use, are, permanently attached to houses as fixtures, and, as such, a part of the realty. 26 C. J. 651 *et seq.* § 1 *et seq.*

The term "utensil" might be said to be sufficiently broad to include door knobs. However, door knobs are designed to be, and, when in use, are, permanently attached to doors. They are, therefore, fixtures, and, as such, a part of the house or realty. Many other necessary and useful articles, such as locks, bolts, hinges, etc., are of the same class.

We do not wish to be understood as holding that the term "household utensils," as used in paragraph 339, *supra*, is limited to a class of articles which, when in use, may be moved from place to place in the household. There are articles of utility which, although attached to houses and used in the household only where attached, retain their status as personalty and are not to be regarded as a part of the realty. However, in the instant case, there is no evidence of record to establish that, when attached to doors, the involved articles do not become a part of the realty.

The collector classified the imported articles as dutiable under paragraph 397, *supra*, and, as his decision is presumed to be correct, it was incumbent upon appellants to establish that the involved articles were not fixtures but household utensils within the purview of paragraph 339, *supra*. Appellants having failed to establish such fact, the trial court properly overruled the protest.

The next question requiring our consideration is whether the trial court erred in dismissing protests 551525–G, 552561–G, and 586142–G as legally insufficient.

Section 514 of the Tariff Act of 1930 relates to the filing of protests by importers and others, and provides, *inter alia*, that an importer may "file a protest in writing with the collector setting forth *distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection*" to the rate and amount of duty assessed against imported merchandise. [Italics ours.]

In the case of *United States* v. *Sheldon & Co.*, 5 Ct. Cust. Appls. 427, T. D. 34946, this court, in considering the sufficiency of certain protests, said:

\* \* \* one cardinal rule in construing a protest is that *it must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made and was brought to the knowledge of the collector to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect if it was one that could be obviated.* This, in effect, has long been the doctrine enunciated by the Supreme Court of the United States. Davies *v.* Arthur (96 U. S., 148), Arthur *v.* Morgan (112 U. S., 495). United States *v.* Salambier (170 U. S., 621). See also Carter *v.* United States (1 Ct. Cust. Appls., 64; T. D. 31033) and Sonneborn's Sons *v.* United States (3 Ct. Cust. Appls. 54; T. D. 32348).

In the various cases where this principle has been upheld it will appear that in some the correct paragraph has been cited without mentioning the rate of duty; again, the correct rate has been mentioned without referring to the paragraph; and other discrepancies and infirmities have been considered and discussed. It has, however, uniformly been considered, as already suggested, that one great rule of construction is that at the time he makes his protest the importer must have in mind the objection afterwards made at the trial *and must sufficiently, in view of all the circumstances, call the collector's attention thereto, so that he may consider and pass upon the same;* and the determination of this case must stand or fall upon the application of that rule. [Italics not quoted.]

In the case of *United States* v. *Macksoud Importing Co. et al.*, 25 C. C. P. A. (Customs) 44, T. D. 49041, this court expressly approved the principles of law announced in the *Sheldon* case, *supra*, and stated that they were applicable to protests filed under the provisions of section 514 of the Tariff Act of 1930, "so far as original protests are concerned."

The protests here under consideration were not amended under the provisions of section 518 of the Tariff Act of 1930, the right of amending them being expressly waived by the stipulation entered into by counsel for the parties.

A protest is, as claimed by counsel for the Government, an importer's pleading, and, under the provisions of section 514, is intended to serve as a "notice to the collector of the claims made by a protestant, as well as an appeal to the United States Customs Court." *United States* v. *Macksoud Importing Co. et al.*, *supra*.

So far as the issues here are concerned, the three protests now under consideration are substantially the same. It will be unnecessary, therefore, to discuss more than one of them.

In protest 552561–G, the Asia Commercial Co., one of appellants, stated that the reasons for objecting to the collector's assessment of duties were that—

Utensils, and Hollow or Flat Ware are dutiable:
(1) At 50% under par. 339 (plated with silver).
(2) At 40% under par. 339 (composed of metal, not plated).
(3) At 5¢ per lb. and 30% under par. 339 (enameled ware, etc.).
(4) At 45% under par. 397 (mfs. of metal).
(5) At 20% under par. 327 (cast hollow ware).
(6) At 25% under par. 328 (cylindrical vessels).

It is further claimed that classification should have been at the entered rate. Each of the claims asserted herein is made with the proviso and condition that the duty claimed is lower than the duty assessed. *This protest is intended to apply to all goods covered by the entries referred to, of the same kind or character as the goods here.specified, whether or not particularly enumerated herein.* [Italics ours.]

The protest also contains the entry number, the name of the vessel on which the goods were imported, the date of entry or arrival of the goods, and the date when the entry was liquidated by the collector.

It is not stated in the protest under what paragraphs of the tariff act the imported articles were assessed for duty by the collector, and the only description of them, if any, is that they are "Utensils, and Hollow or Flat Ware." None of the merchandise covered by the invoice and entry was described in either as utensils, or as hollow or flat ware.

The protest contains the statement that it applies to all goods covered by the entry of the same kind or character specified therein, whether or not particularly enumerated.

The invoice and entry cover a variety of articles entered, respectively, as manufacturers of brass (ornaments), manufactures of silverplated ware (cloisonnè ware), manufactures of linen "EMBD," manufactures of stone, manufactures of wood, and "Silk Clothing Embd." (A red line has been drawn through the words "Silk Clothing Embd," and the notation "Smokers Art" written directly beneath, probably by the appraiser.)

In answer to protest 552561–G, the appraiser stated that he did not know what merchandise the importer intended to include by the language "Utensils, and Hollow or Flat Ware." (It should be stated that, as to the other protests now under consideration, no such statement was made by the appraiser.)

In the collector's report, under the heading "Description of Merchandise and Assessment," we find the following: "Candlestick, book ends, etc." and "Dish, rice bowl, etc."

In considering the protest, we are confronted with at least two questions: First, what merchandise covered by the entry was claimed to be utensils, or hollow or flat ware? Second, was the protest sufficient to advise the collector of the claims made by the protestant?

Obviously, there is nothing in the protest itself which would direct the attention of the collector to the imported articles intended to be covered thereby, nor are we able to find any description in the invoice or entry which, taken together with the protest, would give the collector the necessary information.

After carefully examining the protests now under consideration, and the invoices and the entries covered thereby, we have no hesitancy in saying that it would be wholly impossible, without a stipulation by counsel for the parties (such as was made in this case) describing the merchandise, for either the trial court or this court to determine what merchandise was intended by appellants to be covered by such protests.

It is argued by counsel for appellants that if the protests are defective at all, they are defective as to form only, and that the trial court was without authority to dismiss protest 586142–G *sua sponte.* In support of their contention, counsel cite the cases of *United States* v. *Fuld & Co.*, 4 Ct. Cust. Appls. 234, T. D. 33476, and *Cross Co. et al.* v. *United States*, 7 Ct. Cust. Appls. 43, T. D. 36308, wherein it was held, *inter alia,* that protests defective as to form only could not be dismissed by the trial court *sua sponte.* However, in each of those cases, the court clearly distinguished between protests defective as to form and those which failed to confer jurisdiction upon the trial court.

No citation of authority is necessary in support of the proposition that a protest which fails to confer jurisdiction upon the trial court should, if the court's jurisdiction is not questioned by a party, be dismissed *sua sponte.*

We are of opinion that the protests here under consideration are plainly in violation of the principles relating to the sufficiency of protests, hereinbefore set forth, which have been frequently announced and consistently adhered to by the courts for more than sixty years; that such protests are not in conformity with the requirements of the provisions of section 514, *supra;* and that they are insufficient to confer jurisdiction upon the United States Customs Court to adjudicate the issues attempted to be raised thereby.

We hold, therefore, that such protests were properly dismissed by the trial court—protests 551525–G and 552561–G on the motion of counsel for the Government, and protest 586142–G *sua sponte.*

The judgment is *affirmed.*

BLAND, Judge, dissenting in part: I concur in the conclusion reached by the majority with reference to holding the door knobs or door knockers not to be household utensils.

I am in disagreement with the majority in holding that the trial court properly dismissed the three protests as being insufficient, particularly the following portions of the opinion:

Obviously, there is nothing in the protest itself which would direct the attention of the collector to the imported articles intended to be covered thereby, nor are we able to find any description in the invoice or entry which, taken together with the protest, would give the collector the necessary information.

After carefully examining the protests now under consideration, and the invoices and the entries covered thereby, we have no hesitancy in saying that it would be wholly impossible, without a stipulation by counsel for the parties (such as was made in this case) describing the merchandise, for either the trial court or this court to determine what merchandise was intended by appellants to be covered by such protests.

    \*        \*        \*        \*        \*        \*        \*

\* \* \* [The protests] are insufficient to confer jurisdiction upon the United States Customs Court to adjudicate the issues attempted to be raised thereby.

It will be noticed that the opinion states that there is nothing in the protest which directs the attention of the collector to the articles intended to be covered by the protest. It will be noticed that earlier in the decision the majority stated:

The protest contains the statement that it applies to all goods covered by the entry of the same kind or character specified therein, whether or not particularly enumerated.

As I interpret the protest it is directed against every item in the entry. It is obvious that some of the items could not by any stretch of the imagination be regarded as "utensils" or hollow or flat ware, but the fact that the protest covered *all* goods should not be regarded in the same manner as if it covered *none* of the goods.

The majority points out that the protestant did not state under "what paragraph of the tariff act the imported articles were assessed for duty by the collector." As to the necessity of setting out how the goods were assessed by the collector, the majority relies upon the decision by this court in *United States* v. *Sheldon. & Co.*, 5 Ct. Cust. Appls. 427, T. D. 34946, wherein it was said in substance that the protestant must call the collector's attention to such facts as will enable him to pass upon the question presented. No one knew better the particular paragraph under which the goods had been classified than the collector. He needed no information on this question.

As I see it, the issue to be decided in this case with respect to the sufficiency of the protest boils down to the single question: Did he sufficiently point out *where the goods should have been classified.* In view of the, I may say, extreme liberality of the courts in passing upon the validity of protests, I am of the opinion that, since the protests involved complained of the collector's liquidation and assessment of duty and under the "reasons for objection" referred to "utensils, and hollow and flat ware" and stated that these articles were duti-

able at various rates under various paragraphs and further claimed that the goods should have been classified at the entered rate, the protests should be held to be sufficient. No formality has ever been required, it being frequently said that Congress intended to permit persons not versed in the technicalities of the law or in preparing pleadings to write the collector a letter or otherwise informally inform him of his dissatisfaction.

The protest involving door knockers, which this court and the trial court overruled, it seems to me contained substantially the same faults which are regarded as fatal in the protests which were dismissed by the trial court. The collector had no trouble in assessing the merchandise and from his reports and from certain reports by the appraiser no difficulty was encountered in determining what character of goods the importer was aiming at. Everybody understood that the importer was claiming that the collector's assessment was erroneous because the merchandise had been assessed as manufactures of metal rather than as utensils or hollow or flat ware.

I am especially out of harmony with the majority in the holding that the dismissed protests failed to confer jurisdiction upon the trial court. Numerous authorities might be cited to show that where a court has jurisdiction it may permit motions involving amendments which would make the pleading affirmatively show on its face a jurisdictional fact. As I understand the holding of the majority it is to the effect that the protest was a nullity; that the court acquired no jurisdiction to decide any question under it. If this is true, it necessarily follows that if the importer had moved to amend the same, under the liberal amendment section (518), the court would have been bound to deny the right to amend because you cannot amend something that does not exist. If the case was not before the court, no amendment could bring the issue before it.

I am unwilling to hold, by necessary implication, that the protestant would not have had the right to amend the protest in accordance with the protest amendment statute. If the protestant had moved to amend and the court had overruled the motion on the ground that it had no jurisdiction, this court, according to the holding of the majority, as I see it, would be compelled to affirm the action of the trial court in its refusal to permit amendment.

So it seems to me that the majority's holding is a far-reaching one and one which is calculated to lead to great embarrassment in the future. I am unwilling to agree to a holding in this case which in the future would require us to deny protestants the right to amend a defective protest. Unquestionably, the trial court had jurisdiction of the case for the purpose of permitting an amendment. Since the majority is of the opinion that the dismissed protests were insufficient to require

that the trial court pass upon the issue sought to be presented, I know of no reason why it cannot hold that, in the absence of an amendment or an attempt to amend, the protest should be dismissed but it should not be put upon the ground of jurisdiction.