KILBURN MILL *v.* UNITED STATES (No. 4145)[1]

United States Court of Customs and Patent Appeals, May 2, 1938.

*Joseph F. Lockett* for appellant.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

[Oral argument April 15, 1938, by Mr. Lockett and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court : [2]

This is an appeal from a judgment of the United States Customs Court, First Division, dismissing appellant's protests, five in number, as being legally insufficient.

So far as the issues here are concerned, the protests are substantially the same. Accordingly, only one need be discussed.

Protest 815404–G, addressed to the Collector of Customs, Boston, Mass., and duly signed and verified by appellant, so far as pertinent, reads:

Protest is herewith made by the Kilburn Mill, New Bedford, Mass., of the liquidation of the following drawback.claim:

Name of vessel and date of exportation:

SS. *Artigas,* August 22, 1932.
SS. *Colleda,* September 6, 1932.

Boston—Number of Entry: 1054.
Date of Entry: August 14, 1933.
Date of Liquidation: March 5, 1935.
.Description of Merchandise: Egyptian Cotton Comber Noils.
Post Office Address: New Bedford, Massachusetts.

It is claimed by the Kilburn Mill that the drawback rate allowed in the above liquidation is not in accordance with the provisions of the Tariff Act and the regulations issued thereunder.

The report of the collector is dated May 12, 1936.

On May 19, 1937, counsel for appellant moved to amend the involved protests by adding to each of them the following:

The Plaintiff claims under Section 313 (a) of the Tariff Act of 1930 that the Collector, when liquidating the drawback entry covered by this protest, did not ascertain the relative values of certain noils, strips, and sliver resulting from the manipulation of imported Egyptian cotton assessed at seven cents per pound under Paragraph 783 of said Act, and therefore did not refund the correct amount of drawback on the merchandise which was exported. The Collector determined alleged relative values by comparing the cost of sliver with the market value of noils and strips, whereas the Plaintiff contends that the relative values.

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

should properly have been determined by comparing the cost of sliver with the cost of noils and strips, as stated by the Plaintiff in the drawback entry.

Demand is hereby made that the said entry be reliquidated and the drawback refunded upon the basis of the relative costs of the noils, strips and sliver.

Thereafter, on May 20, 1937, the case came on for trial, and counsel for the Government moved to dismiss the protests on the ground that they were not in conformity with the provisions of section 514 of the Tariff Act of 1930, and were, therefore, legally insufficient to confer jurisdiction upon the United States Customs Court.

The motion was taken under advisement by the trial court, whereupon considerable evidence was introduced by appellant for the purpose of establishing that the collector was fully informed of the claims of the importer prior to the filing of the involved protests and that the importer's claims as to the "drawback rate" were correct. Evidence was also submitted by counsel for the Government.

Section 514, *supra*, provides, among other things, that an importer may "file a protest in writing with the collector setting forth *distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection*" to the "refusal [of the collector] to pay any claim for drawback." [Italics ours.]

In order to comply with the provisions of section 514, *supra*, a protest must be sufficiently specific and definite, "*in view of all the circumstances*" (*United States* v. *Sheldon & Co.*, 5 Ct. Cust. Appls. 427, T. D. 34946), to call the collector's attention to the claims made by the protestant to the end that the collector may have the opportunity to consider such claims, review his decision, and take such action as he deems proper in the premises. (Italics not quoted.) Such a protest is an importer's pleading, and serves as an appeal to the United States Customs Court. *United States* v. *Macksoud Importing Co. et al.*, 25 C. C. P. A. (Customs) 44, T. D. 49041.

In its decision the trial court, in an opinion by McClelland, Presiding Judge, Brown, Judge, dissenting, among other things, said:

In the first place, the drawback rate has been fixed in section 313 (a) of the Tariff Act of 1930 at 99 per centum of the duties paid. It develops that it is the relative values, determined by the collector, of the noils, strips, and sliver that are objected to, and while by some stretch it may be possible to translate "drawback rate" as "relative values," there is nothing to show in what respect such determination of relative values is claimed to have been erroneous.

On the foregoing showing it cannot be maintained that the pertinent language of the protests quoted above was sufficiently specific to point out to the collector "distinctly and specifically" the grounds of objection to his liquidation, and such being the fact, we are convinced that none of the protests complies with the provisions of section 514, *supra*. See *Mason* v. *Kane*, 16 Fed. Cas. 1044; *United States* v. *Ewing & Clancey*, 3 Ct. Cust. Appls. 339, T. D. 32625, and *United States* v. *Globe Shipping Co., Inc.*, 19 C. C. P. A. 148, T. D. 45262.

The motion to dismiss each of the protests is therefore granted, and the protests, being void *ab initio*, life could not be instilled into them by the process of amendment.

It is obvious that the protests do not state the amounts of drawback to which the importer claimed it was entitled, nor do they contain the statement that the importer claimed a refund as drawback under section 313 (a) of the Tariff Act of 1930. However, the protests do specifically refer to the fact that the importer claimed that the "drawback rate," allowed by the collector, was not "in accordance with the provisions of the Tariff Act and the regulations issued thereunder."

There is but one section—313 (a)—of the Tariff Act of 1930 which provides for a refund of duties as drawback, and a "drawback rate" for merchandise like that here involved. It reads:

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, except that such duties shall not be so refunded upon the exportation of flour or by-products produced from wheat imported after ninety days after the date of the enactment of this Act. *Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation.* [Italics ours.].

The differences of opinion as to the amount of duties to be refunded as drawback on the exported merchandise in the instant case, arise by virtue of the provisions of the italicized portion of section 313, *supra*.

Reference is made in the drawback entries to T. D. 46212–C (63 Treas. Dec. 387), which is a synopsis of a drawback decision. It appears therefrom that the Commissioner of Customs had granted appellant a "Rate" effective on and after May 11, 1932, on *"Card strips, sakel (flat and cylinder), and sakel comber noils."*

Article 1022, Customs Regulations of 1931, in force at the time of the exportation of the involved merchandise, required the filing of an application with the Bureau of Customs prior to the exportation of articles on which drawback was to be claimed "for the establishment of a rate of drawback." Article 1046 (b) of those regulations provided that the collector should ascertain *"the drawback due by reference to the records of importation and the drawback rate under which the drawback claimed is allowable."* [Italics ours.]

Accordingly, the sole issue presented to the collector related to the distribution of the drawback "to the several products in accordance with their relative values at the time of separation."

Article 1047, Customs Regulations of 1931, provided that the values referred to in the statute "shall be market values unless the special regulations under which drawback is claimed provide otherwise."

It is clear from the protests that the protestant was objecting to the amount of duties allowed by the collector as drawback. In view of the

fact that the collector was required to determine "the drawback" in accordance with the provisions of section 313 (a) and special regulations issued by the Treasury Department, if any, it is obvious, we think, that his attention was directed by the protests to the concededly sole issue before him—that of determining the proper amount of duties to be refunded to the importer.

It is true that the protests do not set forth explanatory reasons why the importer thought the amount of duties allowed by the collector as drawback was erroneous. However, protests have never been declared insufficient by the courts because reasons why the protestant thought his claims were right and the decision of the collector was wrong were not set forth therein.

A protest that calls the attention of the collector to the claims of the protestant is legally sufficient, and the reasons upon which such claims are based need not be specifically stated therein. See *United States* v. *Sheldon & Co.*, *supra*.

It appears from Exhibits 2 to 7, inclusive, the importer's certificates of manufacture and delivery of the involved merchandise, the various notices of intent to export (filed with the collector by the Royal Manufacturing Co. on behalf of appellant) and letters attached thereto, and the involved entries that the importer was claiming as drawback an amount based upon a comparison of the *cost* of sliver with the *cost* of noils and strips, rather than an amount based upon a comparison of the *cost* of sliver and the *market value* of noils and strips.

It appears from the record that entry 903—protest 815408–G—was liquidated by the collector on July 14, 1933, in accordance with the drawback entry and the claims made by the importer; that is, the drawback was computed by a comparison of the *cost* of sliver with the *cost* of noils and strips, and the sum of $1,491.91 was refunded by the Government to the importer as drawback under the provisions of section 313 (a), *supra*. Thereafter, following communications between the collector and the importer, the collector, on May 21, 1935, reliquidated entry 903, *supra*, and computed the amount to be refunded as drawback by comparing the *cost* of sliver with the *market value* of noils and strips. The other entries here involved were liquidated on the same basis.

That the protests are sufficiently specific and definite in pointing out the merchandise involved, is conceded by counsel for the Government.

It is stated, however, by counsel for the Government in their supplemental brief that the term "drawback rate," used in the protests, refers to the decision of the Secretary of the Treasury relative to the procedure to be followed by the collector in determining the refund of duties "as drawback," and not to any action of the collector in liquidating the drawback entries; that the word "rate," as used in the protests,

has no significance; and that the purport of the protests is merely that the amounts of duties to be refunded "as drawback" were not ascertained by the collector in accordance with the provisions of the Tariff Act of 1930, and the regulations of the Secretary of the Treasury issued in pursuance thereof.

Under the circumstances of this case, all of the essential facts relative to the protestant's claims *appearing either in the protests or in official documents before the collector*, we think the protests were sufficient to inform the collector of the importer's objections to his decisions. There was nothing for the collector to do, upon the filing of the protests, but to re-examine his liquidations of the entries and ascertain the *relative values of the several products* resulting from the manipulation of the imported merchandise at the time of their separation, and the amount of the refund to which the importer was entitled, from facts officially before him.

But, it is argued by counsel for the Government, the protests do not specifically mention the drawback provisions as being contained in section 313 (a) of the Tariff Act of 1930.

If there were several sections in the Tariff Act of 1930 which might have application to the issues raised by the protestant, that argument by counsel for the Government might be of serious moment. In view of the fact, however, that, so far as the issues in this case are concerned, section 313 (a), *supra,* is the only section in the tariff act which provides for the refund of duties as drawback, we think it was unnecessary for the protestant to mention that section by number in order to call the attention of the collector to its provisions.

We conclude, therefore, that, although the claims made in the protests might well have been more fully stated, the protests were sufficiently specific and definite, *"in view of all the circumstances,"* to direct the attention of the collector to the importer's claims, and to confer jurisdiction upon the United States Customs Court to consider the case on its merits.   [Italics not quoted.]

For the reasons stated, the judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.