**No. 64820.**—Gallagher & Ascher Co. *v.* United States, protest 59/8832–10461 (Chicago).—⬛⬛⬛⬛⬛⬛⬛—The following memorandum accompanied the order denying the Government's motion to dismiss the protest and granting the plaintiff's motion to amend the protest:

LAWRENCE, Judge: Plaintiff herein has protested the classification and assessment with duty on a portion of an importation described in the entry papers as scrap inconel.

The controverted portion of the merchandise was classified by the collector of customs as nickel alloy strip in paragraph 389 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 389), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and assessed with duty at the rate of 12½ per centum ad valorem.

The essence of the protest is that plaintiff claims "said merchandise is free of duty under the provisions of Public Law 678, of the Tariff Act of 1930, of 1930."

Defendant has moved to dismiss the protest "on the grounds of insufficiency and failure to state a cause of action."

Section 514 of the Tariff Act of 1930 (19 U.S.C. § 1514) provides that a protest against the action of the collector of customs in classifying merchandise shall be in writing and shall set forth distinctly and specifically the reasons for the objections thereto.

In support of its motion to dismiss, defendant, in its memorandum on the motion, cites several cases and refers to *United States* v. *Sheldon & Co.*, 5 Ct. Cust. Appls. 427, T.D. 34946, as the "leading case on sufficiency of protests." The following quotation is taken from the *Sheldon* case, *supra*:

It was held in substance in Bilven *v.* United States (1 Ct. Cust. Appls., 205) that one cardinal rule in construing a protest is that it must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made and was brought to the knowledge of the collector to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect if it was one that could be obviated. This, in effect, has long been the doctrine enunciated by the Supreme Court of the United States. [Citing cases.]

In the various cases where this principle has been upheld it will appear that in some the correct paragraph has been cited without mentioning the rate of duty; again, the correct rate has been mentioned without referring to the paragraph; and other discrepancies and infirmities have been considered and discussed. It has, however, uniformly been considered, as already suggested, that one great rule of construction is that *at the time he makes his protest the importer must have in mind the objection afterwards made at the trial* and must sufficiently, in view of all the circumstances, call the collector's attention thereto, so that he may consider and pass upon the same; and the determination of this case must stand or fall upon the application of that rule. [Italics quoted.]

From the foregoing opinion of our appellate court and others referred to by defendant in its memorandum, it appears that the test of the sufficiency of a protest is that "at the time he makes his protest the importer must have in mind the objection afterwards made at the trial and must sufficiently, in view of all the circumstances, call the collector's attention thereto, so that he may consider and pass upon the same."

An application of the statutory requirements contained in section 514, *supra*, and the judicial construction thereof, referred to above, to the present protest leads inevitably to the conclusion that the motion to dismiss filed herein is without merit in the light of the circumstances surrounding the instant importation.

The protest claim for relief pursuant to "the provisions of Public Law 678, of the Tariff Act of 1930, of 1930," is, of course, inaccurate but patently so to anyone versed in customs procedure. The Tariff Act of 1930, although it is itself a public law (Public Law 361, 71st Congress, 2d session), is composed of sections and paragraphs and not of public laws.

Moreover, in view of the special provision which has been made by Congress for free entry of metal scrap, dating back to Public Law 497, 77th Congress, 2d session, effective March 13, 1942, which was enacted as a war measure and has continued uninterruptedly to the present day and recently was extended to June 30, 1961, by Public Law 86–606, 86th Congress, 2d session, when a protest is made for free entry of metal scrap, it is impossible to believe that there could be any confusion in the minds of the parties concerned as to the applicable public law, in view of the long-continued, uninterrupted, special consideration given to that commodity by legislative enactment.

Public Law 497, referred to above, was extended in its application by Public Law 384, 80th Congress, 1st session, and Public Law 613, 80th Congress, 2d session, Public Law 869, 81st Congress, 2d session, was subsequently enacted which, in addition to extending the benefit of free entry to metal scrap, amended the provisions of the original Public Law 497, *supra*, by defining legislatively what the term "metal scrap" was to include and laid down by reference the requirements which must be met in certain instances to obtain the benefit of free entry. Annual amendments of Public Law 869, *supra*, have followed, as mentioned above, the main purpose of which has been to extend the period of effectiveness.

The entry to which the present protest applies covered an importation of scrap inconel or scrap metal. From notations contained on said entry and accompanying papers, it appears that part of the shipment was granted free entry pursuant to Public Law 678 [83d Congress, 2d session], evidence having been produced to the collector that said portion of the importation had been imported for remanufacture by melting and actually had been so used. Apparently, in the absence of such evidence as to the rest of the merchandise, the collector of customs classified the remainder of the importation as nickel alloy strip in paragraph 389 of the tariff act, as modified, *supra*, and imposed duty thereon at the rate of 12½ per centum ad valorem, which gave rise to the instant protest.

It is worthy of special note to observe that the collector of customs, in granting free entry to part of the entered merchandise (not here the subject of protest), makes reference inadvertently to Public Law 678 [83d Congress, 2d session], whereas the applicable statute in effect at the time of the importation was Public Law 66, 84th Congress, 1st session, which extended the effective date of Public Law 869 from July 1, 1955, to June 30, 1956, the instant importation having been made on October 25, 1955. Public Law 678, *supra*, extended the provisions of Public Law 869 for the period from July 1, 1954, to June 30, 1955.

Where, as here, a plaintiff, by timely protest, seeks the application of the benefit of free entry to an importation of scrap metal and bases its protest on a public law inadvertently referred to by the collector of customs as applicable to part thereof, namely, Public Law 678, *supra*, which amended the oft-invoked Public Law 869, *supra*, it can hardly be said that such a protest does not disclose what the importer had in mind, and that the attention of the collector of customs was not sufficiently drawn to the statute invoked so that the latter might consider and pass upon the same, which is the criterion set forth in the *Sheldon* case, *supra*.

It follows, therefore, that the motion of defendant herein to dismiss the protest, being without merit, must be overruled. An order will issue accordingly.

Plaintiff has moved to amend its protest by substituting for the original language the following—"That said merchandise is free of duty under Public Law 869, as extended by Public Law 66, of June 8, 1955." Said motion being in conformity with rule 6(c) of the rules of this court, an order will be entered granting the motion.