(C. D. 175)

RAYBESTOS MANHATTAN, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 8, 1939)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before McClelland, Sullivan, and Brown, Judges; Brown, J., dissenting

McClelland, Presiding Judge: This protest is against the assessment of duty made by the collector of customs at the port of New York at the rate of 40 per centum ad valorem and 7 cents per pound under paragraph 27 (a) (2) and (5) of the Tariff Act of 1930 on merchandise described on the invoice as metacresol. So far as pertinent the protest reads as follows:

> Notice of dissatisfaction is hereby given with and protest is hereby made against your decision, liquidation and assessment of duties at 40% and 7¢ per lb. or other rate or rates on metacresol covered by the entries below named, or other merchandise covered by said entries, and contained in the cases or packages marked and numbered as below stated. The reasons for objection are as follows:
>
> We claim that said merchandise is properly dutiable at 20% and 3½¢ per lb. under par. 27 (b) of the Tariff Act of 1930.

Paragraph 27 (a) (2) and (5), under which duty was assessed as aforesaid, reads:

> Par. 27. Coal-tar products:
> (a) * * * (2) all distillates (except those provided for in subparagraph (b) of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar, which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate or which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate;
>
> * * * * * * *
>
> (5) all the foregoing products provided for in this paragraph, not colors, dyes or stains, color acids, color bases, color lakes, leuco-compounds, indoxyl, indoxyl compounds, ink powders, photographic chemicals, medicinals, synthetic aromatic or odoriferous chemicals, synthetic resinlike products, synthetic tanning materials, or explosives, and not specially provided for in paragraph 28 or 1651, 40 per centum ad valorem and 7 cents per pound.

and subparagraph (b) of the same paragraph, under which the protest claim was made, reads:

> (b) Metacresol having a purity of 90 per centum or more, orthocresol having a purity of 90 per centum or more, paracresol having a purity of 90 per centum or more, phenol, carbolic acid which on being subjected to distillation yields in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate, cresylic acid which on being subjected to distillation yields in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate, and any mixture of any of the foregoing products with any of the products provided for in paragraph 1651, 20 per centum ad valorem and 3½ cents per pound.

When the protest was called for hearing, preliminary to the taking of testimony plaintiff's counsel made the following statement for the record:

> If the court please, the merchandise in this case is meta-para cresol, which is claimed by the importer to be dutiable under paragraph 27 (b), which provides for

cresylic acid, which, on being subjected to distillation yields in the portion distilling below 215 degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate.

It is the contention of the importer that the merchandise falls within that phraseology; that is, that the merchandise falls within the common or commercial meaning of cresylic acid, and that it meets the tests which are provided in the provision under which we claim. * * *

It was assessed under the same paragraph, that is, paragraph 27 (a) (2) (5), which has a general provision, or catch-all provision for certain coal-tar products other than those specified in paragraph 27 (b); but we claim that it does fall within paragraph 27 (b).

The rate assessed by the Government was 40% and 7 cents a pound. The rate claimed is 20% and 3½ cents a pound.

Immediately following these statements counsel for the Government said:

I move to dismiss the protest upon the ground that it fails to comply with section 514 of the Tariff Act of 1930. This is the first time that I have heard officially, and in a way it is binding on the plaintiff, what the claim is. It is impossible to tell from the protest what their claim is. They simply say that it is classifiable, according to their claim, under paragraph 27 (b). Now, paragraph 27 (b) provides for five separate commodities, or acids, which are classifiable under that paragraph. We don't know whether it is the first one, metacresol, having a certain purity, or whether it is paracresol having the same purity, or whether it is orthocresol having the same purity, or whether it is phenol, or whether it is carbolic acid, or whether it is cresylic acid having the specifications which the Tariff Act lays down. There are six different things that it might be, and the protest doesn't show on which their claim is based. It has occasioned the greatest difficulty even to know what the issue was that we have to meet.

Whereupon, at the suggestion of the judge presiding, it was agreed that the motion to dismiss should be left undisposed of until the case was finally taken up for decision on the merits, it being understood that an exception would be allowed to the party against whose interest the ruling was made on the motion to dismiss.

It will be observed from a reading of subparagraph (b) of paragraph 27, *supra*, that seven different commodities are therein provided for. It will also be observed that the protest of the plaintiff corporation is directed only against the collector's classification and assessment of duty on "Meta Cresol," unless it be that the printed words "or other merchandise covered by said entries" merit any consideration, which I do not think they do in view of the fact that the merchandise in issue is described on the invoice as metacresol. From the specific mention in the protest of metacresol and the identical description in the invoice as aforesaid, it is manifest that when the protest was made it was especially directed and limited to the collector's action on metacresol.

From the statement of plaintiff's counsel hereinbefore quoted it is unmistakable that the contention of the plaintiff, at the time of trial at least, was not that the merchandise the classification of which is in issue was metacresol, but that it was in fact cresylic acid, and while

it is true that cresylic acid is provided for in subparagraph (b), *supra*, there is no language in the protest that by any stretch could be held to direct the attention of the collector to the fact that the protestant claimed that duty should have been assessed on the merchandise under the *eo nomine* provision in subparagraph (b) for cresylic acid.

As hereinbefore stated, there are seven different commodities provided for in subparagraph (b), *supra*. They are:

(1) Metacresol having a purity of 90 per centum or more,

(2) Orthocresol having a purity of 90 per centum or more,

(3) Paracresol having a purity of 90 per centum or more,

(4) Phenol,

(5) Carbolic acid which on being subjected to distillation yields in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate,

(6) Cresylic acid which on being subjected to distillation yields in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate,

(7) Any mixture of any of the foregoing products with any of the products provided for in paragraph 1651.

From the language of the protest and the description of the involved merchandise on the consular invoice which was before the collector there was absolutely nothing to direct his attention to the fact that his classification should have been as any one of the seven commodities provided for in the said paragraph other than metacresol.

Section 514 of the existing tariff law provides that protests against the decisions of collectors of customs must set forth—

distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto.

Compliance with that provision of the statute required that the collector should be fully advised by the language contained in the protest of the grounds of objection to his classification, and not only that but the classification and assessment of duty that it is claimed he should have adopted in making his liquidation of the involved entry.

It must be borne in mind that the collector had nothing before him but the invoice covering the merchandise in issue and the protest when it became necessary for him to review his decision. Compliance with the statute required that he be informed by the protest what the protestant claimed the merchandise to be, whether it was metacresol, orthocresol, paracresol, phenol, carbolic acid, cresylic acid, or a mixture of any of these with the products provided for in paragraph 1651.

I am unqualifiedly of the opinion that the protest before us does not comply with the provisions of section 514, *supra*, and is wholly insufficient to confer jurisdiction upon this court.

In *Lichtenstein* v. *United States*, 1 Ct. Cust. Appls. 79, T. D. 31105, Judge Montgomery, writing the unanimous opinion of the court, said:

It is not essential that the importer shall in the protest "hit the bird in the eye." But it is essential that he state his claim with such reasonable clearness and certainty as to acquaint the collector with the real ground of his complaint. This protest is misleading rather than informing. This obscurity results from a pernicious method of attempting to throw upon the collector and the courts the burden which properly rests upon the protestant of fairly apprising the collector and the court of *real* claims as distinguished from possible claims, which might be appropriately made with reference to goods not involved in the importation in question.

In *Davies* v. *Arthur*, 96 U. S. 148, Mr. Justice Clifford, among other things, said:

Protests of the kind must contain a distinct and clear specification of each substantive ground of objection to the payment of the duties. Technical precision is not required; but the objections must be so distinct and specific, as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated.

See also *United States* v. *Fred Gretsch Mfg. Co., Inc.*, 26 C. C. P. A. 267, C. A. D. 26, wherein Judge Bland, writing the unanimous opinion of the court, said:

It was the duty of the court to determine whether or not there had been a compliance with the statute when the protest was filed. Was the protest, when filed, sufficiently specific and distinct in the respects required by the statute to enable the collector to perform his duties in the manner contemplated by the law?

See also the authorities cited in that opinion.

In view of the foregoing the protest should be and is dismissed.

### DISSENTING OPINION

BROWN, Judge: This suit against the United States was brought at New York to recover customs duties claimed to have been illegally exacted on certain merchandise invoiced as metacresol imported from England.

The collector took duty at 40 per centum ad valorem and 7 cents per pound under paragraph 27 (a) (2), Tariff Act of 1930:

(2) all distillates (except those provided for in subparagraph (b)) of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar, which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate or which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate * * *.

The plaintiff claims that the merchandise is properly dutiable at 20 per centum ad valorem and 3½ cents per pound under that part of paragraph 27 (b) which is italicized below:

(b) Metacresol having a purity of 90 per centum or more, orthocresol having a purity of 90 per centum or more, paracresol having a purity of 90 per centum or more, phenol, carbolic acid which on being subjected to distillation yields in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate, *cresylic acid which on being subjected to distillation yields in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate,* and any mixture of any of the foregoing products with any of the products provided for in paragraph 1651, 20 per centum ad valorem and 3½ cents per pound..

At the trial a motion was made to dismiss the protest (record, pp. 2, 3) apparently because of claimed multifariousness because paragraph 27 (b), under which claim is made, provides for five separate articles. Decision on that motion was reserved to be passed on at this time. The doctrine of multifariousness, rarely applied in this jurisdiction, has only been applied to claims made under different paragraphs. It has never before been asserted to apply because a number of articles were mentioned in the paragraph claimed by the importer and he did not state in his protest which one he claimed the imported article to be.

We are unable to extend the application of the doctrine to a case of this character and, therefore, overrule the motion to dismiss.

If the importer, after stating the right paragraph, does not have to mention the similitude clause which brings under the paragraph articles *not named therein* but dutiable thereunder by similarity of material, texture or use, it is plain that the importer does not have to mention which article in an enumeration of articles in the paragraph claimed his importation consists of.

In *United States* v. *Rice & Co.*, 257 U. S. 536, affirming 10 Ct. Cust. Appls. 165, T. D. 38403, Chief Justice Taft said:

This case involves the sufficiency of a protest necessary to justify a suit against the United States for duties illegally exacted.

    \*       \*       \*       \*       \*       \*       \*

A protest must be distinct and specific enough to show that the objection taken at the hearing or trial was at the time of filing the protest in the mind of the importer and sufficient to notify the collector of its true nature and character to the end that he might then ascertain the precise facts and have adequate opportunity to correct mistakes and cure defects. *Heinze* v. *Arthur's Executors*, 144 U. S. 28, 34; *Schell's Executors* v. *Fauché*, 138 U. S. 562; *Arthur* v. *Morgan*, 112 U. S. 495, 501; *Arthur* v. *Dodge*, 101 U. S. 34, 37; *Greely's Administrator* v. *Burgess*, 18 How. 413, 416. But no special form is required. "A protest which indicates to an intelligent man the ground of the importer's objection to the duty levied upon the articles should not be discarded because of the brevity with which the objection is stated." *Schell's Executors* v. *Fauché, supra.* "We are not, therefore,

disposed to exact any nice precision, nor to apply any strict rule of construction upon the notices required under this statute. It is sufficient if the importer indicates distinctly and definitely the source of his complaint, and his design to make it the foundation for a claim against the government." *Greely's Administrator v. Burgess, supra.* Does a claim in a protest under a particular paragraph, *with no more*, adequately indicate to the collector that the importer intends to claim the article imported may come under the specified paragraph either directly, or by resemblance to the articles therein described? [Emphasis mine.]

He then answers his question and holds such claim sufficient in the following language:

When an importer specifies in his protest a paragraph under which he claims his importation should be classified, the collector should enquire not only *whether the article comes within the paragraph named,* but also whether it so resembles the articles specifically described therein as to require it to be classified thereunder. [Emphasis mine.]

It ought to be plain to everyone that if we apply the spirit of Mr. Chief Justice Taft's language to the circumstances before us we must hold this protest to be sufficient.

To hold otherwise would be to inject into this reasonable, human customs practice a serious detriment which would hamper and impair the liberal judicial review in customs taxation as intended to be established by Congress, and involve customs pleading (as someone said of the pleadings at common law) in metaphysical mazes of hopeless intricacy. We are, therefore, clear that the motion to dismiss ought to be denied.

It is to be observed that there is a specific exception in paragraph 27 (a) (2) of the distillates provided for in paragraph 27 (b).

If, therefore, the merchandise here in question is provided for in paragraph 27 (b) it is thereby specifically excluded from paragraph 27 (a) (2).

The issue in the case therefore is: Does the merchandise consist of—

cresylic acid which on being subjected to distillation yields in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate * * *.

At the trial the plaintiff introduced the testimony of three thoroughly qualified chemists, each being especially familiar with the subject of coal-tar products.

No witnesses were called by the Government.

The record shows that cresylic acid is one of the coal-tar products; that the terms "cresylic acid" and "cresol" are interchangeable; and that cresylic acid is a mixture, in any proportions, of the three isomeric cresols, namely, orthocresol, metacresol and paracresol (R. 6, 28, 31).

An analysis of the sample taken out of the shipment in question was made under the supervision and direction of the witness Weisberg (R. 8–9).

The witness described, in detail, the various tests to which the sample was subjected (R. 11–12).

The witness caused a chart or graph of the analysis to be prepared (R. 13) which was received in evidence and marked Exhibit 1 (R. 14).

The witness stated that Exhibit 1 shows that 97 per centum of the product was distilled at a maximum temperature of 204.7 degrees centigrade (R. 16), which means that 97 per centum was distilled at a temperature of less than 215 degrees centigrade (R. 17).

This witness, and the other two witnesses, stated that in their opinion as chemists the sample analyzed consisted of cresylic acid, which on being subjected to distillation yielded in the portion distilling below 215 degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate (R. 17, 28–29, 31).

The record shows further that the term "cresylic acid" is a generic term embracing a variety of products, of which the merchandise in question is one (R. 25, 34).

On this evidence, which was in no way contradicted or rebutted by the Government, it is perfectly plain that it falls squarely within paragraph 27 (b), as cresylic acid distilling more than 75 per centum tar acids below 215 degrees centigrade, and therefore expressly excluded from paragraph 27 (a) (2).

T. D. 46146 seems to be the basis of the classification here made. It reads as follows:

*Metacresol, cresol, etc.*

Metacresol, cresol, metaparacresol, and other similar products dutiable at the rate of 40 percent ad valorem and 7 cents per pound under paragraph 27 (a) (2) and (a) (5), Tariff Act of 1930

TREASURY DEPARTMENT,
OFFICE OF THE COMMISSIONER OF CUSTOMS,
*Washington, D. C.*

COLLECTOR OF CUSTOMS, *New York.*

SIR: The bureau is in receipt of a letter from the appraiser of merchandise at your port, dated October 26, 1932, in which he states that as a result of a recent investigation in the trade concerning the commercial designation of certain coal-tar products or distillates, his office has ascertained that metacresol having a purity of less than 90 percent U. S. P. cresol, metaparacresol, and other similar products are not bought and sold and known commercially in this country as cresylic acid.

As a result of the investigation the appraiser expresses the opinion that the products mentioned, which are now classified under paragraph 27 (b) of the Tariff Act of 1930 at the rate of 20 percent ad valorem and 3½ cents per pound, are properly dutiable under paragraph 27 (a) (2) and (a) (5) at the rate of 40 percent ad valorem and 7 cents per pound.

In view of the statement of the appraiser the bureau concurs in his opinion as to the proper classification of the products enumerated.

It appears, however, that the change in rate would result in an increase in the duty now assessed, and the higher rate should not be imposed except upon the

products mentioned entered for consumption or withdrawn from warehouse for consumption after thirty days, after this letter appears in the weekly TREASURY DECISIONS.

Respectfully,                                    FRANK DOW,
                                    *Acting Commissioner of Customs.*

(32–4)

Approved January 28, 1933:

OGDEN L. MILLS,
        *Secretary of the Treasury.*

From the Department ruling just quoted it would appear that merchandise such as that in question was classified under paragraph 27 (b) until the Department, on January 28, 1933, as the result of an investigation concerning the commercial designation of certain coal-tar products, changed this practice, on the ground that such products were not bought and sold and known commercially in this country as cresylic acid.

It is axiomatic that commercial designation is a fact to be proved by the party who asserts that a tariff term has a meaning in the trade and commerce of the United States differing from its common meaning. If it is a fact that the commercial meaning of the term "cresylic acid" is different from the common meaning, and that the merchandise in question is excluded from such common meaning, there is no evidence whatever in this case to that effect.

The dictionary definitions of "cresol" and "cresylic acid" serve to confirm the testimony given by the chemists that the merchandise in question consists of cresylic acid or cresol. These definitions are as follows (Webster's New International Dictionary, Second Edition, 1936):

*cresol*, n. 1. Chem. Any of three isomeric substances, $CH_3C_6H_4OH$, homologous with and resembling phenol, and distinguished as orthocresol, metacresol, and paracresol; methyl-phenol; called also cresylic acid. They are obtained from coal tar and wood tar as colorless, oily liquids or solids, and are used as disinfectants. Paracresol occurs combined in the urine.

2. A mixture of isomeric cresols obtained from coal tar.

*cresylic acid.* Chem. Cresol; used esp. of a crude mixture of the three cresols.

The legislative history of the provision for cresylic acid is consistent with the foregoing.

The Tariff Act of 1922 did not contain an *eo nomine* provision covering cresylic acid, but did contain the following provision, in paragraph 27 thereof:

all distillates of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar, which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate or which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate;

In the case of *Lehn & Fink, Inc.* v. *United States*, 12 Ct. Cust. Appls. 359, T. D. 40519, it was held that cresylic acid which when subjected

to distillation yielded in the portion distilling below 215 degrees centigrade a quantity of tar acids more than 75 per centum of the original distillate was dutiable under the provisions of paragraph 27 just quoted.

On July 20, 1927 (T. D. 42337), the President, acting under the flexible provisions of the act of 1922, wrote into the law a new paragraph for *cresylic acid* which on being subjected to distillation yielded in the portion distilling below 215 degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate, and reduced the duty on such cresylic acid to 20 per centum ad valorem and 3½ cents per pound.

When the Tariff Act of 1930 was enacted, the new provision created by the President was incorporated into paragraph 27 (b) by Congress.

Merchandise such as that involved here was classified under paragraph 27 (b) as cresylic acid until the change of practice was ordered.

This shows beyond question that Congress, in enacting paragraph 27 (b) in the Tariff Act of 1930, intended just what it said, namely, that "cresylic acid which on being subjected to distillation yields in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate" should be assessed at 20 per centum ad valorem and 3½ cents per pound.

The entire record in this case shows that the merchandise in question falls within the phraseology just quoted, and is therefore properly dutiable at 20 per centum ad valorem and 3½ cents per pound under paragraph 27 (b) instead of 40 per centum ad valorem and 7 cents per pound under paragraph 27 (a) (2) as assessed.

Judgment should therefore issue sustaining the claim in the protest for classification under paragraph 27 (b), Tariff Act of 1930, of the metacresol here involved at the rate of 20 per centum ad valorem and 3½ cents per pound instead of as assessed under paragraph 27 (a) (2) at 40 per centum ad valorem and 7 cents per pound.

The above, upon a subject regularly assigned to the writer, was written as for a proposed division opinion. Having been rejected by the majority, it is now respectfully filed as a dissenting opinion.

In addition, the authorities cited by the majority opinion do not support the conclusion reached therein.

In the *Lichtenstein* case, 1 Ct. Cust. Appls. 79, T. D. 31105, the protest which was held bad wandered all over the tariff act. The importer there claimed twenty-four different paragraphs of the Tariff Act of 1897 that prescribed over fifty different rates of duty. That does not help their conclusion in dismissing the protest before us, which claimed the right rate of duty and the right paragraph, in a short concise protest.

The case of *Davies* v. *Arthur*, 96 U. S. 148, 152, is not in point. There the collector exacted 60 per centum duty under a paragraph

covering silk scarfs. The importer claimed under a paragraph at .35 per centum as wearing apparel. It developed at the trial that the merchandise was not dutiable at either the rate claimed or the rate assessed, but was properly dutiable under a third paragraph not claimed in the protest at 50 per centum. The sole question before the Circuit Court who sat as both court and jury was whether the importer could recover the 10 per centum difference between the 60 per centum paragraph and the 50 per centum paragraph notwithstanding he had not claimed the 50 per centum paragraph. The Circuit Court ruling which the Supreme Court affirmed did not dismiss the protest but gave judgment for the defendant because the 50 per centum paragraph had not been claimed in the protest. That case is no authority upon the situation before us here where the importer has claimed the correct paragraph and the correct rate of duty. It is only authority for the settled customs rule that in such circumstances as the Supreme Court had before them the protest must be overruled without affirming the action of the collector.

Again, *United States* v. *Fred Gretsch Mfg. Co., Inc.*, 26 C. C. P. A. 267, C. A. D. 26, decided December 19, 1938, was another case of a multitude of inconsistent claims similar to and following the *Lichtenstein* case as held by the court of appeals and bears no possible relation to the situation before us.

The above authorities in no way support the new rule concerning sufficiency of protest now attempted to be set up for the first time by the majority opinion herein.