## DAVIES *v.* ARTHUR.

An importer, having set forth in his written protest the ground of his objection to the payment of customs duties exacted by the collector, cannot, in his suit against the latter, recover them upon any ground other than that so set forth.

ERROR to the Circuit Court of the United States for the Southern District of New York.

This is an action by John M. Davies & Co. to recover certain duties claimed by them to have been illegally exacted by Arthur, the defendant, as collector of the port of New York.

In April, 1872, they imported from Liverpool certain merchandise, a portion of which is described on the invoice as "Ducape Eglington ties," which are manufactured of silk, and used and known as neckties. Another portion of the merchandise is described as "twill silk cut up." The appraiser, in his report to the collector, returned the ties as silk scarfs, and the twill silk as silk in pieces; whereupon the collector imposed a duty of sixty per cent *ad valorem* upon each.

The importers thereupon protested in writing against the assessment, upon the ground that the merchandise "should only pay duty, being articles worn by 'men, women, or children,' &c., and 'wearing-apparel,' under sect. 22, act of March 2, 1861, and sect. 13, act of July 14, 1862, at thirty-five per cent *ad valorem.* "They are neither 'scarfs' nor ready-made clothing in fact, nor as known in trade and commerce."

On the same day, they appealed to the Secretary of the Treasury, who affirmed the action of the collector, and they thereupon brought this suit.

It having been admitted by both parties at the trial that the goods were, under the concluding clause of the eighth section of the act of June 30, 1864 (13 Stat. 210), subject to a duty of fifty per cent *ad valorem*, as manufactures of silk not otherwise provided for, the question submitted to the court, which tried the case without a jury, was whether, under their protest, the plaintiffs could recover the difference between the amount of duties payable on said "Ducape Eglington ties," at the rate of fifty per

cent *ad valorem*, and the amount claimed and exacted by the defendant on the same, at the rate of sixty per cent *ad valorem.*

There was a judgment for the defendant, whereupon the plaintiffs brought the case here.

*Mr. Edward Hartley* for the plaintiffs in error.

*The Solicitor-General, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Importers who have paid duties under protest in writing may, if the duties were illegally exacted and the protest sets forth, distinctly and specifically, the grounds of the objection to the payment, maintain an action of assumpsit against the collector to recover back the amount so paid. 5 Stat. 727.

Persons importing merchandise are required to make their protests distinct and specific, in order to apprise the collector of the nature of the objection, before it is too late to remove it, or to modify the exaction, and that the proper officers of the treasury may know what they have to meet, in case they decide to exact the duties as estimated, notwithstanding the objection, and to expose the United States to the risk of litigation. *Curtis's Administratrix* v. *Fiedler*, 2 Black, 461.

Payment of the duties having been made under protest in writing, the importers brought assumpsit against the collector to recover back the amount which they allege was illegally exacted. Service was made; and both parties appeared, and, having waived a trial by jury, submitted the case to the court upon an agreed statement of facts. Hearing was had; and the court rendered judgment in favor of the defendant, and the plaintiffs sued out the present writ of error.

Goods were imported by the plaintiffs from Liverpool into the port of New York, a portion of which were described in the invoice as Ducape Eglington ties, which are manufactures of silk, and are used and known as neckties, and were valued in the invoice at a net valuation equivalent to $696 in gold coin. Another portion of the merchandise is described in the invoice as twill silk cut up, and is valued in the invoice at a net valuation equivalent to $234.13, gold. Both parcels were part of the merchandise described in the invoice as the contents of a case marked and numbered; and the statement is, that they were

entered for consumption by the plaintiffs, under the dutiable rate of sixty per cent *ad valorem*, other portions of the merchandise being placed in the entry respectively under the dutiable rates of thirty, thirty-five, and fifty per cent *ad valorem*.

Sufficient appears to indicate that the goods were appraised as the agreed statement shows; that the local appraiser reported the neckties to the collector as silk scarfs, and the twill silk cut up as silk in pieces, and that both were subject to duty at the rate of sixty per cent *ad valorem*. Pursuant to that report, the collector liquidated the duties at that rate; and the plaintiffs paid that rate of duty on the neckties and the silk cut up, on the entered valuation of the same, as before explained. Custom duties are payable in gold; and the plaintiffs paid the amounts in that medium, and under protest in writing.

Subsequent to the passage of the act of the 3d of March, 1839, and before the passage of the act of the 26th of February, 1845, such a suit against a collector to recover back duties as having been illegally exacted could not be maintained, unless it was brought before the collector placed the money to the credit of the Treasurer of the United States. 4 Stat. 348; *Cary* v. *Curtis*, 3 How. 236.

Hardship and injustice resulted from that rule of decision; and the Congress, by the later act, established a different rule, and provided to the effect that the importer may in such a case have such a remedy against the collector to recover back such duties, if he protested in writing at or before the payment of the duties, and set forth distinctly and specifically the grounds of his objections to the payment of the same. 5 Stat. 727.

Different forms of expression are employed in later enactments, but all which are applicable to the case before the court are, except as to time, substantially to the same effect. 13 id. 214, sect. 14.

What is required by that act in respect to the matter in question is that the importer, if dissatisfied with the decision of the collector, shall give notice in writing to him on each entry, setting forth therein, distinctly and specifically, the grounds of his objection thereto; which, certainly, is not different from what is required by the antecedent act. Nor is there any substantial difference in the construction given by

the courts to the provision which contains that requirement. Instead of that, both acts referred to make it necessary that the protest shall be in writing; and the requirement is that the importer shall set forth, distinctly and specifically, the grounds of his objections to the payment of the liquidated duty.

Unless the protest is made in writing, and is signed by the claimant within ten days after the ascertainment and liquidation of the duties, setting forth distinctly and specifically the grounds of objection to the payment, no action of the kind against the collector can be maintained to recover back the duties as having been illegally exacted. Nor is it sufficient to object to the payment of any particular duty or amount of duty, and to protest in writing against it; but the claimant must do more, as is evident from the words of the act of Congress. He must set forth in his protest the grounds upon which he objects, distinctly and specifically, the reason being, as ruled by Chief Justice Taney, that the words of the act requiring the protest are too emphatic to be overlooked in the construction of the provision. *Mason* v. *Kane*, Taney's Dec. 177.

Mistakes and oversights will sometimes lead to irregular assessment, and the object of the requirement is to prevent a party, if he suffers the mistake or oversight to pass without notice, from taking advantage of it when it is too late to make the correction, and to compel him to disclose the grounds of his objection at the time when he makes his protest.

Protests of the kind must contain a distinct and clear specification of each substantive ground of objection to the payment of the duties. Technical precision is not required; but the objections must be so distinct and specific, as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character. to the end that he might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated. *Burgess* v. *Converse*, 2 Curt. 223.

Two objects, says Judge Curtis, were intended to be accomplished by the provision in the act of Congress requiring such a protest: 1. To apprise the collector of the objections entertained by the importer, before it should be too late to remove

them, if capable of being removed. 2. To hold the importer to the objections which, he then contemplated, and on which he really acted, and prevent him, or others in his behalf, from seeking out defects in the proceedings, after the business should be closed, by the payment of the money into the treasury. *Warren* v. *Peaselee*, 2 Curt. 235; *Thomson* v. *Maxwell*, 2 Blatchf. 392.

Merchandise entered as silk ties was imported by the plaintiffs into the port of New York, on which the defendant exacted an *ad valorem* duty of sixty per cent, upon the assumption that the articles were properly classified as silk scarfs. 13 Stat. 210.

Prompt objection to that classification was made by the plaintiffs; and they protested against the payment of the liquidated duty, on the ground that the goods imported and entered should be classified as "articles of wearing-apparel worn by men, women, and children," and that they were subject only to a duty of thirty-five per cent *ad valorem*, as prescribed by two prior tariff acts. 12 id. 186, 556.

Properly construed, their protest is that the articles should only pay duty at thirty-five per cent *ad valorem*, because the articles imported were wearing-apparel worn by men, women, and children, and were not scarfs, nor ready-made clothing in fact, nor as known in trade or commerce.

Litigation ensued in consequence of that difference of opinion between the importers and the officers of the government; but, when the case came to trial, both parties agreed that the merchandise imported should have been classified as a manufacture of silk not otherwise provided for, under the concluding clause of sect. 8 in the act of the 30th of June, 1864, and that it was dutiable at fifty per cent *ad valorem*, differing from the theory of each party as assumed at the time of the appraisement and liquidation of the duties. 13 id. 210. Still, the plaintiffs claimed to recover the difference of ten per cent between the proper duty and the duty exacted by the defendant as collector; and the court below held that they could not do so under their protest, as they could only be heard to allege the objections distinctly and specifically stated in their protest, pursuant to the requirement contained in the act of Congress. Judgment was given for the defendant; and the plaintiffs sued out the present writ of error, to correct the ruling of the Circuit Court.

Three points were ruled by the Circuit Court : 1. That, unless the protest set forth distinctly and specifically the ground of the objection to the amount claimed, it fails to meet the requirement of the act of Congress. 2. That the office of the protest is to point out to the officers of the customs the precise errors of fact or of law which render the exaction of the duty unauthorized. 3. That the plaintiffs are precluded from insisting that their importation was a manufacture of silk not otherwise provided for, and subject to a duty of fifty per cent instead of sixty, when, by their protest, they allege it to be wearing-apparel, &c., subject to a duty of thirty-five per cent.

Satisfactory reasons in support of these conclusions are given by the circuit judge, to which it will be sufficient to refer, without repetition. *Davies* v. *Arthur*, 13 Blatchf. 34 ; *Norcross* v. *Greeley*, 1 Curt. 120.

Apply these principles to the case before the court, and it is clear that there is no error in the record.

*Judgment affirmed.*