**Slip Op. 03-104**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, SENIOR JUDGE**

|  |  |
|---|---|
| VOLKSWAGEN OF AMERICA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant. | Court No. 96-00132 |

[Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is denied.]

Date: August 13, 2003

Law Offices of Thomas J. Kovarcik (Thomas J. Kovarcik) for plaintiff Volkswagen of America, Inc.

Peter D. Keisler, Assistant Attorney General; John J. Mahon, Acting Attorney in Charge; Barbara S. Williams, Civil Division, Commercial Litigation Branch, United States Department of Justice; Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, Of Counsel, for defendant United States.

## OPINION

**GOLDBERG, Senior Judge:** In 1994 and 1995, Plaintiff Volkswagen of America, Inc. ("VW") imported automobiles from foreign manufacturers Volkswagen Aktiengesellschaft ("VWAG") and Audi Aktiengesellschaft ("Audi"). VW then sold the imported automobiles to customers in the United States under consumer warranties. After importation, VW discovered some automobiles were defective. Pursuant to the consumer warranties, VW repaired

the defects, and tracked the repairs by the individual Vehicle
Identification Numbers ("VINs").  VW also maintained computer
records of the cost for each warranty repair, and was reimbursed
by VWAG and Audi for all warranty repairs.

VW appeals the United States Customs Service's[1] ("Customs")
denial of the following protests in its complaint: 5301-95-
100342, 5301-4-100550, 5301-5-100072, 5301-5-100178, 5301-5-
100279, 5301-95-100342, 1803-94-100041, 1803-94-100042, 1803-94-
100072, 5401-94-100010, 5401-94-100019, 5401-94-100016, 5401-93-
100022, 5401-93-100026, 5401-93-100078, 1101-95-100590, 1101-95-
100499, 1101-95-100679, and 1101-95-100708.  These protests cover
sixty-nine entries; however, VW maintains that it is only moving
for summary judgment on eighteen of the entries.  VW also states
in its Reply Brief that it "moves to sever and dismiss from this
action other entries and protests included in the Summons that
are not set forth in Appendix 1."  The Court will grant VW's
motion to dismiss the other entries from the case, without
prejudice.  Therefore, the Court retains jurisdiction over the
following: entry numbers 110-1030393-9, 110-9691248-7, 110-
9691645-4, 110-1030968-8, 110-9691813-8, 110-1030670-0, 110-

---

[1]  The United States Customs Service has since become the
Bureau of Customs and Border Protection per the Homeland Security
Act of 2002, § 1502, Pub. L. No. 107-296, 116 Stat. 2135, 2308-09
(Nov. 25, 2002), and the Reorganization Plan Modification for the
Department of Homeland Security, H.R. Doc. 108-32, p. 4 (Feb. 4,
2003).

7609214-4, 110-9691328-7, 110-7609254-0, 110-7609111-2, 110-7157040-9, 110-7157943-4, 110-7157110-0, 110-7157246-2, 110-7158048-1, 110-7157706-5, 110-7157464-1, 110-7157491-4.  These entries are contained in protest numbers 1101-95-100708, 1101-95-100679, 1101-95-100590, 1101-95-100499, 5301-4-100550, 5301-95-100342, 5301-5-100178, 5301-5-10072.

## I.  STANDARD OF REVIEW

This case is before the Court on VW's motion for summary judgment and Customs' cross-motion for summary judgment.  The court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  USCIT R. 56(d).  A party opposing summary judgment must "go beyond the pleadings" and by his or her own affidavits, depositions, answers to interrogatories, and admissions to file, designate "specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  "While it is true that Customs' appraisal decisions are entitled to a statutory presumption of correctness, see 28 U.S.C. § 2639(a)(1), when a question of law is before the Court, the statutory presumption of correctness does not apply." Samsung Electronics America, Inc. v. United States, 23 CIT 2, 5, 35 F. Supp. 2d 942, 945-46 (1999) (citing Universal Elecs., Inc.

v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997))

(hereinafter "Samsung III").

## II.  DISCUSSION

### A.  Jurisdictional Issues

The Court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  28 U.S.C. § 1581(a) (2000).  Therefore, a prerequisite to jurisdiction by the Court is the denial of a valid protest.  Washington Int'l Ins. Co. v. United States, 16 CIT 599, 601 (1992).  Based on the following analysis, the Court concludes that VW filed a valid protest, and thus the Court has jurisdiction.

A protest is required to "set forth distinctly and specifically" the following information: (1) "each decision . . . as to which protest is made"; (2) "each category of merchandise affected by each decision . . ."; and (3) "the nature of each objection and the reasons therefor."  19 U.S.C. § 1514(c)(1) (2000).  The implementing regulations expand the requirements, specifying that the protest must include "[a] specific description of the merchandise affected by the decision as to which protest is made"; and "[t]he nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal." 19 C.F.R. § 174.13(a) (2002).

In the seminal case <u>Davies v. Arthur</u>, 96 U.S. 148 (1877), the Supreme Court articulated the rationale for the specificity required of protests:

> Protests . . . must contain a distinct and clear specification of each substantive ground of objection to the payment of the duties.  Technical precision is not required; but the objections must be so distinct and specific, as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character to the end that he might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated.

<u>Davies</u>, 96 U.S. at 151.

Customs contends that the protests filed by VW were not distinct and specific since VW did not (a) tie specific repairs to specific entries and give the dollar amounts for the repairs; (b) state the amount of the allowance claimed; or (c) identify the claimed defects.  Under Customs' reasoning, the protests' deficiencies undermined the rationale for requiring specificity in the protest, namely to notify Customs of the true nature of VW's protest so that Customs could correct any defect.  Customs argues that this case is similar to <u>Washington</u>, because the claimed deficiencies in the protests would "'eviscerate the protest requirements mandated by Congress and effectively require Customs to scrutinize the entire administrative record of every entry in order to divine potential objections and supporting

arguments which an importer meant to advance.'" Custom's Brief at 10-11 (quoting <u>Washington</u> at 604).

The Court concludes that Customs' argument is not persuasive. In the principal case upon which Customs relies, <u>Washington</u>, the court held that an importer's protest of a Customs' classification ruling was not valid because it did not counter with its own asserted classification. In that context, the Court found that the protests' deficiencies required Customs to analyze the entire administrative record to determine every possible classification the importer could assert, and argue against each possibility.

The critical distinction between this case and <u>Washington</u> is that VW is not challenging a classification. There is no alternative classification for VW to propose. Ideally, in challenging a classification an importer would provide Customs with the alternative(s) so that Customs could analyze sample evidence to determine the classification for the entire shipment. In this case VW has provided Customs with the regulation to apply: VW protested the liquidation because of "latent defects." Unlike the protest in <u>Washington</u>, Customs does not have to contemplate all of the statutory and regulatory provisions pertaining to liquidation to determine why VW is protesting the liquidation. Customs' real concern with VW's protests is that the protests will require Customs to evaluate the evidence of

each repair to determine if the repaired defect existed at the time of importation, admittedly a time-consuming task. But the task remains the same even if VW listed all of the various defects in its protest. Customs would still have to analyze the evidence of repairs for every automobile, since the defects claimed are not uniform throughout the entries. Customs simply cannot avoid sifting through the entire evidentiary record in this type of claim.

Although VW's protests are distinct and specific in the spirit of <u>Davies</u>, VW's protests must contain the statutory and regulatory required elements for a valid protest. Because VW has set forth in its protest all of the required elements, VW has filed valid protests and the appeal from them is properly before the Court.

### *(1) VW's protest identified the decision protested*

The regulations require the protestant to identify the decision "with respect to each category, payment, claim, decision, or refusal." 19 C.F.R. § 174.13(a). VW identified in its protests each decision as to which the protest was made, namely "the appraised value of the subject merchandise" in the attached entries. The attachments listed the entry numbers for entries of both defective and non-defective vehicles. Customs contends that VW was required to identify each defective vehicle, not simply identify entries that contained some defective

vehicles. By including non-defective vehicles in the protests, Customs complains it is required to go through every entry and ascertain which vehicles were defective. The statute does not require that level of specificity in the protest, and as previously discussed, supra at 5-7, Customs cannot avoid sifting through each entry to evaluate the evidence of defects.

### (2) *VW identified the category of merchandise*

VW identified the only category of the merchandise at issue, namely referring to "all merchandise covered by the above cited entry," and attaching the contested entries of automobiles to the protest.

### (3) *VW identified the nature of each objection*

VW set forth the nature of its objection and the reason therefor in the identical language in protest numbers 1101-95-100708, 1101-95-100679, 1101-95-100590, 1101-95-100499, 5301-4-100550, 5301-95-100342, 5301-5-100178, 5301-5-10072:

> Protest is hereby made against your decision, liquidation, and assessment of duties on all merchandise covered by the above cited entry. The claim is that the appraised value of the subject merchandise, and consequently the duties assessed, should be reduced by a reasonable allowance for latent defects and/or maintenance costs.

VW Protests. The language of the protests and the attachments do not reference the specific vehicles that were defective or the types of latent defects, or tie the defects to specific vehicles. However, these are not fatal flaws in the protests. In Mattel v.

United States, the court stated that the "one cardinal rule in construing a protest is that it must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made and was brought to the knowledge of the collector to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect if it was one that could be obviated."  72 Cust. Ct. 257, 260, 377 F. Supp. 955, 959 (1974)(citing Bliven v. United States, 1 Ct. Cust. 205, 207 (Ct. Cust. App. 1911)). Customs contends the absence of precise facts makes the protests invalid.  However, the protest is the tool whereby the collector seeks the precise facts.  VW's protests clearly contest the appraised values of the entries because many of the vehicles allegedly contained latent defects, and clearly request an allowance commensurate with those defects.

On a more practical level, Customs cannot now claim that the language of the protests was insufficient to appraise Customs that the claims were sought under 19 C.F.R. § 158.12.  The protests in this case contained the same language as the protests in the Samsung case.  Customs did not challenge the language of the protests in Samsung at any point during the administrative proceedings or before the Court.  The protests in Samsung read as follows:

> Protest is hereby made against your decision,
> liquidation, and assessment of duties on all

> merchandise covered by the above cited entry.  The
> claim is that the appraised value of the subject
> merchandise, and consequently the duties assessed,
> should be reduced by a reasonable allowance for latent
> defects and/or maintenance costs.

Samsung, Protest No. 1001-9-000182.  It is disingenuous for

Customs to claim now that the language of the protests by VW is

insufficient when Customs has previously recognized the same

language as a valid protest under 19 C.F.R. § 158.12.  And while

the Court is not constrained by Customs' admission of

jurisdiction before the Court, it is persuasive here that when

Customs first answered VW's complaint, Customs admitted that the

Court had jurisdiction over this matter.  See Answer, ¶ 1.

There is one problem with VW's protests that limits the

Court's jurisdiction.  It is clear that VW had in mind at the

time of protest defective automobiles that had already been

repaired; however, VW could not have had in mind defects to

automobiles that had not been repaired before the protests were

filed.  Therefore, the Court does not have jurisdiction over the

automobiles that were repaired after the date VW filed its

protests with Customs.[2]  See Mattel, 72 Cust. Ct. at 260, 377 F.

---

[2]  VW styled its request for re-liquidation as § 1514
protests, most of which were filed within 90 days of liquidation,
and therefore were timely protested.  Section 158.12, which
provides for a refund of duties if the goods were defective at
the time of importation, has no time limit to request the refund.
Because VW filed its request as a protest, the Court does not
opine at this time on whether VW could have filed a request for
reconsideration under § 1520 or directly under § 158.12, and then
protest a denial of that request.  See, e.g., HRL 547062, May 7,

Supp. at 959 ("a protest . . . must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made"). As a result, the Court does not have jurisdiction over vehicles repaired after the individual protest dates of each of the eighteen entries.

**B.** **The Evidence Submitted by VW**

19 C.F.R. § 158.12 allows an importer to claim an allowance in value for merchandise partially damaged at the time of importation.[3] "A protestant qualifies for an allowance in dutiable value where (1) imported goods are determined to be partially damaged at the time of importation, and (2) the allowance sought is commensurate to the diminuation in the value of the merchandise caused by the defect." Samsung III, 23 CIT at 6, 35 F. Supp. 2d at 946. Customs opposes VW's claims under § 158.12 because (A) § 158.12 does not cover damaged goods when the

_____

1999 (In a section § 158.12 claim, protestant first filed a claim under § 520(c) of the Tariff Act to seek a reduction in the appraised value because the goods were defective when imported. Protestant later filed a protest when the § 520(c) claim was rejected.).

[3] The relevant part of § 158.12 reads:

(a) *Allowance in value.* Merchandise which is subject to ad valorem or compound duties and found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported, with an allowance made in the value to the extent of the damage. However, no allowance shall be made when forbidden by law or regulation . . . .

19 C.F.R. § 158.12 (2002).

damage was not discovered at importation; and (B) VW has not
provided adequate evidence to overcome the presumption of
correctness afforded Customs' denial of VW's protests.[4]

### (1) *Section 158.12 Covers Damage Undiscovered at Time of Importation*

Customs' first challenge to the substance of VW's claim
under § 158.12 is that this section does not apply to latent
damage which was undiscovered at the time of importation.  VW,
however, argues that the section applies to defects existing at
the time of importation, even if those defects remain
undiscovered until some time after entry.

For the reasons articulated in Saab Cars USA v. United
States, Slip Op. 03-82 (July 14, 2003), this Court rejects
Customs argument that the port director has to discover the
defects at the time of importation.  Therefore, § 158.12 applies
to defects existing at the time of importation, whether or not
the defects were discovered by the port director at the time of
importation.

### (2) *VW has shown that material issues of fact exist in its claim for an allowance under 19 C.F.R. § 158.12*

Customs requires the protestant to establish the elements of
19 C.F.R. § 158.12 by clear and convincing evidence.  See Samsung
III, 23 CIT at 6, 35 F. Supp. 2d at 946 (approving this

---

[4] Customs also challenges VW's claims because some repair
claims allegedly include overhead expenses under 19 C.F.R. §
158.12.  The Court will reserve that issue for trial.

evidentiary standard).  In <u>Samsung III</u>, the Court set forth three requirements for an importer to successfully claim an allowance under 19 C.F.R. § 158.12.  First, the importer must show that it contracted for "defect-free" merchandise.  <u>Samsung III</u>, 23 CIT at 4-5, 35 F. Supp. 2d at 945.  Second, the importer must be able to link the defective merchandise to specific entries.  <u>Samsung III</u>, 23 CIT at 6, 35 F. Supp. 2d at 945-46 (citing <u>Samsung II</u>, 106 F.3d at 379, n.4).  Third, the importer must prove the amount of the allowance value for each entry.  <u>Id.</u>

Regarding the first requirement, VW has easily shown that it contracted for "defect-free" merchandise.  VWAG and Audi, the manufacturers, agreed to pay for the costs of repairing defects in the merchandise.  <u>See</u> <u>Samsung II</u>, 106 F.3d at 379 (agreements between manufacturer and importer that some merchandise will be defective merely acknowledges the commercial reality that some goods will be defective, and does not mean that the importer contracted for defective merchandise).  VW also warranted to its customers that the goods were free of defects.  <u>See</u> <u>id.</u> (evidence that importer warranted to its customers that the goods were defect-free demonstrated that importer ordered defect-free merchandise). And finally, VW, VWAG, and Audi, have a close corporate relationship, implying that VWAG and Audi would not sell VW defective merchandise.  <u>See</u> <u>id.</u> at 379 (the close corporate relationship between manufacturer and importer implies

that the importer would not provide defective equipment to its consumers).

VW has shown there are material issues of fact regarding the second factor. Samsung III required the importer to establish by clear and convincing evidence which entries had defects at the time of importation. 23 CIT at 7-9, 35 F. Supp. 2d at 946-47. The importer in Samsung III did not provide sufficient evidence, offering only the consumer warranties and internal documents showing that claims for defects not existing at the time of importation were rejected. 23 CIT at 7-8, 35 F. Supp. 2d at 947-48. VW provides the evidence the Court in Samsung III sought: descriptions of repairs to each vehicle, and connects each vehicle repaired to a specific entry through the VINs. See Samsung III, 23 CIT at 8, 35 F. Supp. 2d at 947 ("a claimant should provide specific descriptions of the damage or defect alleged and, in some manner, relate that defective merchandise to a particular entry"). What remains for trial is development of the factual record to "independently confirm the validity" of the repair records, to establish that the defects did indeed exist at the time of importation. Id.

The third and final requirement for a successful claim under 19 C.F.R. § 158.12 is a showing by clear and convincing evidence of the amount of the allowances for each entry of the defective vehicles. Samsung III, 23 CIT 9-11, 35 F. Supp. 2d at 948-50.

VW has detailed repair records that indicate the costs for each repair.  Through the VINs, VW can tie the repair costs to each entry.  Trial is necessary to independently verify the amount of the allowances.  Therefore, VW has created a material issue of fact regarding the amount of the allowances, which will be resolved at trial.

### III.  CONCLUSION

Because material issues of fact remain, the Court denies VW's motion for summary judgment and denies Customs' cross-motion for summary judgment.  Factual questions remain regarding whether the defects existed at the time of importation, and the amount of allowances tied to those defects.  See Samsung II at 380, n.4 ("For purposes of the remand, we specially note that only those defects in existence at the time of importation qualify for an 'allowance' in value.  Samsung thus bears the burden of proving, for instance, that the costs to repair defects under consumer warranties were incurred to repair defects in existence at importation, and not, for instance, those caused by its own mishandling or by consumer misuse of the equipment.").  The factual record to be developed at trial will include any new, relevant evidence produced by VW to meet the burden of proof on its 19 C.F.R. § 158.12 claim.  See E.I. Dupont de Nemours and Co. v. United States, 24 CIT 1301, 1302-04, 123 F. Supp.2d 637, 639-

41 (2000) (pursuant to 28 U.S.C. § 1581(a), the importer is

permitted to present new evidence to develop the Court's record).


_____
                        **Richard W. Goldberg**
                        **SENIOR JUDGE**

**Dated:      August 13, 2003**
**            New York, New York**

**<u>ERRATA</u>**

<u>Volkswagen of America, Inc. v. United States</u>, Court No. 96-00132, Slip Op. 03-104, issued August 13, 2003.

- On page 12, the sentence "Customs requires the protestant to establish the elements of 19 C.F.R. § 158.12 by clear and convincing evidence.  <u>See</u> <u>Samsung III</u>, 23 CIT at 6, 35 F. Supp. 2d at 946 (approving this evidentiary standard)" should read  "Customs requires the protestant to establish the elements of 19 C.F.R. § 158.12 by a preponderance of the evidence.  <u>Fabil Mfg. Co. v. United States</u>, 237 F.3d 1335, 1340-41 (Fed. Cir. 2001)".

- On page 14, the sentence "<u>Samsung III</u> required the importer to establish by clear and convincing evidence which entries had defects at the time of importation.  23 CIT at 7-9, 35 F. Supp. 2d at 946-47" should read "<u>Samsung III</u> required the importer to establish by a preponderance of the evidence which entries had defects at the time of importation.  23 CIT at 7-9, 35 F. Supp. 2d at 946-47; <u>see also</u> <u>Fabil Mfg.</u>, 237 F.3d at 1340-41".

- On page 14, the sentence "The third and final requirement for a successful claim under 19 C.F.R. § 158.12 is a showing by clear and convincing evidence of the amount of the allowances for each entry of the defective vehicles. <u>Samsung III</u>, 23 CIT 9-11, 35 F. Supp.2d at 948-50" should read "The third and final requirement for a successful claim under 19 C.F.R. § 158.12 is a showing by a preponderance of the evidence of the amount of the allowances for each entry of the defective vehicles.  <u>Samsung III</u>, 23 CIT at 9-11, 35 F. Supp. 2d at 948-50; <u>see also</u> <u>Fabil Mfg.</u>, 237 F.3d at 1340-41".

August 18, 2003.