**VOLKSWAGEN OF AMERICA, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 07–47.**
**Court No. 96–01–00132.**

United States Court of International Trade.

March 28, 2007.

---

Law Offices of Thomas J. Kovarcik (Thomas J. Kovarcik), New York City, for Plaintiff Volkswagen of America, Inc.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, Of Counsel, for Defendant United States.

## OPINION

GOLDBERG, Senior Judge.

In this case, Plaintiff Volkswagen of America, Inc., ("Volkswagen") seeks an allowance against import duties for the value of imported automobiles that were allegedly defective at the time of importation. The United States Customs Service [1] ("Customs") liquidated the entries without an allowance in the appraised value of the merchandise. Customs denied Volkswagen's protests, and Volkswagen commenced an action to challenge the protest denials in this Court. Both Customs and Volkswagen filed motions for summary judgment. The Court held that it lacked jurisdiction over vehicles that were repaired after the date of protest because Volkswagen "could not have had in mind defects to automobiles that had not been repaired before the protests were filed." *Volkswagen of Am., Inc. v. United States,* 27 CIT 1201, 1206, 277 F.Supp.2d 1364, 1369 (2003) (*"Volkswagen I "*). As for the remaining claims, the Court denied both motions because factual issues remained as to whether the defects existed at the time of importation and the amount of allowances tied to those defects. *See id.* at 1208, 277 F.Supp.2d at 1371. The Court specifically noted that "[w]hat remains for trial is development of the factual record to 'independently confirm the validity' of the repair records, to establish that the defects did indeed exist at the time of importation." *Id. (quoting Samsung Elecs. Am., Inc. v. United States,* 23 CIT 2, 8, 35 F.Supp.2d 942, 947 (1999)), *aff'd* 195 F.3d 1367 (Fed.Cir.1999).

After the Court's decision in *Volkswagen I,* this action was stayed pending the resolution of *Saab Cars USA, Inc. v. United States,* 434 F.3d 1359 (Fed.Cir.2006) (*"Saab III "*). The circumstances in *Saab III* are very similar to those presented in this action. The Federal Circuit held that Saab failed to prove by a preponderance of the evidence that its merchandise was defective at the time of importation. *See id.* at 1375. After *Saab III* was decided, the Court ordered Volkswagen to attempt to demonstrate how that case was distinguishable from the circumstances of Volkswagen's case.[2] Volkswagen has complied with this order, and has made clear that

1. The United States Customs Service has since become the Bureau of Customs and Border Protection per the Homeland Security Act of 2002, § 1502, Pub.L. No. 107–296, 116 Stat. 2135, 2308–09 (Nov. 25, 2002), and the Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. 108–32, p. 4 (Feb. 4, 2003).

2. The order stated the following in relevant part:

[I]t is hereby ORDERED that Plaintiff Volkswagen of America, Inc. ("Plaintiff"), shall ... file a brief addressing why it believes the evidence in this case, and in particular the evidence produced after this Court's denial of Plaintiff's summary judgment motion August 13, 2003, establishes that the alleged defects existed at the time of importation; and it is further ORDERED that such brief endeavor to distinguish the circumstances of this case from the circum-

with the additional trial evidence it has submitted, its supporting brief constitutes its summation at trial. Pl.'s Br. 4. Accordingly, the decision rendered in this action will be submitted as a final judgment.

## I. JURISDICTION

In its evidence submitted for trial, Volkswagen includes repairs completed *after* the vehicles' respective protest dates. Volkswagen claims that the Court has jurisdiction over these repairs, because as long as at least one repair was done prior to protest, the Court has jurisdiction over the "vehicle." Consequently, the Court would have jurisdiction over every subsequent repair performed on that vehicle, even if the repair was done after the date of protest. Customs disagrees, and argues that all claims relating to repairs that occurred after the date of protest should be dismissed for lack of jurisdiction.

■ The Court has exclusive jurisdiction over "any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]." 28 U.S.C. § 1581(a) (2000). The Court does not have jurisdiction over the action pursuant to § 1581(a) if the plaintiff has not filed a valid protest. *See Computime, Inc. v. United States,* 772 F.2d 874, 875 (Fed. Cir.1985). If certain vehicle repairs are not covered by a valid protest, the Court has no jurisdiction over those repairs.

■ A valid protest must set forth distinctly and specifically each decision as to which a protest is made, and the nature of and reasons for each objection. *See* 19

U.S.C. § 1514(c)(1) (2000); 19 C.F.R. § 174.13(a)(6) (2006). The governing principles concerning what constitutes a valid protest were articulated by the Supreme Court in *Davies v. Arthur*:

> [T]he objections [in a protest] must be so distinct and specific, as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated.

96 U.S. 148, 151, 24 L.Ed. 758 (1878); *accord VWP of Am., Inc. v. United States,* Slip Op. 06–144, 2006 WL 2779988, 2006 Ct. Intl. Trade LEXIS 146, at *16 (CIT Sept. 26, 2006) ("The minimal requirement has long been whether the importer has sufficiently conveyed to Customs an impression of the injury it believes it suffered by Customs' decision or action."). In its evidence submitted for trial, Volkswagen has included thousands of repairs that occurred after the protest date. These alleged defects could not have been "in the mind of the importer" when the protest was made. Additionally, Customs would never have had the opportunity to "correct the mistake and cure the defect" if a valid protest could include thousands of repairs added post-protest. A protest should sufficiently define the outside parameters of the dispute so that they are brought to the attention of the Customs Service.[3] *See*

---

stances in *Saab Cars USA, Inc. v. United States,* 434 F.3d 1359 (Fed.Cir.2006), where the U.S. Court of Appeals for the Federal Circuit held that that plaintiff's reliance on probabilistic warranty tracking evidence, though "generally reliable," was not sufficient to sustain a plaintiff's burden of proving by a preponderance of the evidence that the particular defects in that case as to which allowances were claimed under 19

C.F.R. § 158.12 existed at the time of importation....
Sched. Order 1, May 8, 2006.

**3.** This is not to say that all omissions, including minor and inadvertent ones, could divest the Court of jurisdiction. As long as the original protest gave sufficient notice to Customs of the actual claim, then jurisdiction will lie. *See VWP,* Slip Op. 06–144, 2006 WL 2779988, 2006 Ct. Intl. Trade LEXIS 146, at *16–17.

*Lykes Pasco, Inc. v. United States,* 22 CIT 614, 615, 14 F.Supp.2d 748, 750 (1998). In this case, the parameters of the dispute would not be sufficiently defined by the protest if Volkswagen was permitted to continually add defects and repair evidence as they are discovered.

Following these principles, the Court held in *Volkswagen I* that it did "not have jurisdiction over vehicles repaired after the individual protest dates of each of the eighteen entries." 27 CIT at 1206, 277 F.Supp.2d at 1369. The Court reasoned as follows:

> It is clear that [Volkswagen] had in mind at the time of protest defective automobiles that had already been repaired; however, [Volkswagen] could not have had in mind defects to automobiles that had not been repaired before the protests were filed. Therefore, the Court does not have jurisdiction over the automobiles that were repaired after the date [Volkswagen] filed its protests with Customs. *See Mattel v. U.S.,* 72 Cust.Ct. 257, 260, 377 F.Supp. 955, 959 (1974) ("a protest ... must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made").

*Id.* (footnote omitted). To support its theory of jurisdiction, Volkswagen focuses on the Court's statement in *Volkswagen I* that "the Court does not have jurisdiction over the *automobiles* that were repaired after the date [Volkswagen] filed its protests...." *Id.* (emphasis added). Volkswagen puts great emphasis on the fact that the Court used the word "automobiles" instead of "repairs" when making this statement. Additionally, the Federal Circuit in *Saab III* "affirm[ed] the decision of the CIT dismissing those claims relating to *cars as to which no repair existed at the time of protest,* because Saab provided no

evidence that it was aware of those defects at that time." 434 F.3d at 1368 (emphasis added). Once again, because the focus of this language is on "cars," and not "repairs," Volkswagen believes that once the Court has jurisdiction relating to a vehicle, it has jurisdiction over repairs to that vehicle discovered after the protest date.

Volkswagen is incorrect because its theory of jurisdiction is completely divorced from the requirements of a valid protest. Regardless of how the jurisdictional holdings were phrased in both *Volkswagen I* and *Saab III,* the principles set forth in *Davies v. Arthur* and 19 U.S.C. § 1514(c)(1) must be followed. Additionally, Volkswagen fails to note that in *Saab I,* the Court clearly stated that it "lacks jurisdiction over claims for *vehicle repairs* that occurred after the vehicles' respective protest dates." *Saab Cars USA, Inc. v. United States,* 27 CIT 979, 991, 276 F.Supp.2d 1322, 1333 (2003) ("*Saab I* ") (emphasis added). This language clarifies that the Court did not intend to make a distinction between vehicles that had at least one repair before the protest date and vehicles that had no repairs. Instead, the Court found a relevant legal distinction between the defects Volkswagen knew about at the time of protest, and the defects that were unknown at that time.

In light of the above, the Court does not have jurisdiction over defects discovered (as evidenced by repairs done) after the date of protest. The Court does have jurisdiction over Volkswagen's remaining claims pursuant to 28 U.S.C. § 1581(a).

## II. STANDARD OF REVIEW

■ Customs' appraisement decisions are ordinarily entitled to a statutory presumption of correctness. *See* 28 U.S.C.

(stating that an inadvertent error in entry number contained in original protest is not a

jurisdictional bar if Customs was apprised of the proper entry number).

2639(a)(1) (2000); *Saab Cars USA, Inc. v. United States,* 28 CIT ——, ——, 306 F.Supp.2d 1279, 1283 (2004) (*"Saab II "*), *aff'd, Saab III,* 434 F.3d at 1359. However, this presumption "carries no force as to questions of law." *Universal Elecs. Inc. v. United States,* 112 F.3d 488, 492 (Fed.Cir. 1997). "[A] question as to the legal sufficiency of the evidence is a question of law." *Kent v. Principi,* 389 F.3d 1380, 1383 (Fed. Cir.2004). In the present case, the Court is asked to determine, in light of *Saab II* and *Saab III,* whether Volkswagen has put forth sufficient evidence to sustain its burden of proving by a preponderance of the evidence that certain defects existed in its merchandise at the time of importation. Because this is a question of law, the Court will review it de novo.

## III. *DISCUSSION*

### A. Volkswagen's Evidence Submitted for Trial

Volkswagen's trial evidence consists of two exhibits.[4] Exhibit A includes eighteen documents; one for each of the eighteen subject entries. *See* Pl.'s Ex. A (Confidential); Pl.'s Br. 12. Each document contains a chart with eighteen columns of warranty repair details. The eighteen information categories Volkswagen has provided are: (1) vehicle model number, (2) vehicle identification number ("VIN"), (3) repair order number, (4) warranty claim type, (5) damage code, (6) deciphered damage code, (7) mileage, (8) in-service date, (9) repair date, (10) labor cost, (11) part cost, (12) other costs and credits, (13) total repair cost paid by plaintiff, (14) adjustments, (15) repair cost billable to factory, (16) qualifying warranty repair cost, (17) qualifying warranty overhead cost, (18) total qualifying warranty cost. *See* Pl.'s Ex.

A (Confidential); Pl.'s Br. 12. Most of this information was already before the Court in *Volkswagen I,* with the exception of the vehicle model number, the deciphered damage code, mileage, and the in-service date.

Volkswagen has also provided the Court with Exhibit B, which is entitled "Damage Code Key." *See* Pl.'s Ex. B (Confidential). This exhibit categorizes the different warranty claim types listed in Exhibit A. Volkswagen first lists what it considers to be "included claim types." These are warranty claim categories that, according to Volkswagen, necessarily encompass repairs of defects existing at the time of importation. For example, the list of "included claim types" includes emissions warranty repairs, recall repairs, paint claims and powertrain defect repairs.[5] *See* Pl.'s Br. 15–16. Volkswagen claims that all repairs performed under these claim-types reflect defects that existed at the time of importation. If a repair reflects damage that did not exist at importation, it would be categorized under one of the several "excluded claim types" listed in Exhibit B.

Additionally, Exhibit B contains more detailed descriptions of the repairs listed in Exhibit A. In order to connect the more detailed descriptions in Exhibit B to the repairs in Exhibit A, the Court is required to look at [ ] listed in Exhibit A. That [ ] code is further deciphered in Exhibit B. This process is further discussed below.

### B. An Allowance for Damage Existing at the Time of Importation Pursuant to 19 C.F.R. § 158.12

■ An importer may claim an allowance in value for merchandise that is partially damaged at the time of importation.

---

**4.** For a discussion of evidence already before the Court in *Volkswagen I,* see 27 CIT at 1206–08, 277 F.Supp.2d at 1370–71.

**5.** The complete list of "included claim types" is as follows: [ ]. See Pl.'s Ex. B (Confidential); Pl.'s Br. 16–17 (Confidential).

*See* 19 C.F.R. § 158.12 (2006).[6] In order to successfully claim a § 158.12 allowance, an importer must "establish by a preponderance of the evidence which entries had defects at the time of importation."[7] *Volkswagen I*, 27 CIT at 1208, 277 F.Supp.2d 1364; *accord Fabil Mfg. Co. v. United States*, 237 F.3d 1335, 1339 (Fed. Cir.2001). In *Volkswagen I*, this Court was satisfied that Volkswagen could, in part, link defective merchandise to specific entries. *See* 27 CIT at 1208, 277 F.Supp.2d at 1371. While Volkswagen was able to connect evidence of repairs to specific vehicles, and in turn connect those vehicles to specific entries, it still needed to develop the factual record to "independently confirm the validity" of the repair records. *Id.* This independent confirmation is necessary to "establish that the defects did indeed exist at the time of importation." *Id.*

### C. Independent Confirmation of the Validity of the Repair Records

■ The Court discussed the "independent confirmation" requirement in detail in *Samsung*, 23 CIT at 7–9, 35 F.Supp.2d at 947–48. In that case, Samsung presented consumer warranties as evidence that the subject merchandise was damaged at importation. *See id.* at 7, 35 F.Supp.2d at 947. Samsung's warranty only covered repairs for defective merchandise, and not merchandise damaged through misuse or mishandling. *See id.* at 8, 35 F.Supp.2d at 947. In addition, an executive from Samsung stated via affidavit that under the warranty, only merchandise with latent defects was repaired or replaced. *See id.* The Court found this evidence insufficient. The Court stated that "[a]lthough the Court has no reason to doubt the veracity of Samsung's assertions, without additional, independent evidence to corroborate the assertions, the Court cannot verify that the merchandise was actually defective at the time of importation, as opposed to damaged later through misuse or mishandling." *Id.* The Court went on to describe how a claimant could prevail on a § 158.12 claim:

> [T]o make a section 158.12 claim, a claimant should provide specific descriptions of the damage or defect alleged and, in some manner, relate that defective merchandise to a particular entry. Such descriptions are necessary because both the Court and Customs must independently confirm the validity of an allowance claim. And, descriptions or samples provide a reasonably objective basis upon which to assess such a claim. For example, descriptions can be reviewed by the Court and by independent experts to confirm that the alleged damage existed at the time of importation, or that the damage is recognizable as a true manufacturing defect.

*Id.* at 8, 35 F.Supp.2d at 947–48.[8]

---

6. Section 158.12 states the following: Merchandise partially damaged at time of importation. (a) Allowance in value. Merchandise which is subject to ad valorem or compound duties and found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported, with an allowance made in the value to the extent of the damage. 19 U.S.C. § 158.12.

7. There are actually three requirements for an importer to successfully claim an allowance under 19 C.F.R. § 158.12:(1) the importer must show that it contracted for defect-free merchandise, (2) the importer must link the defective merchandise to specific entries, and (3) the importer must prove the amount of the allowance value for each entry. *See Volkswagen I*, 27 CIT at 1207, 277 F.Supp.2d at 1370; *Samsung*, 23 CIT at 4–6, 35 F.Supp.2d at 945–46. Volkswagen has already successfully established that it contracted for "defect-free" merchandise. *See Volkswagen I*, 27 CIT at 1207, 277 F.Supp.2d at 1370.

8. The Court in *Samsung* applied a "clear and convincing" evidentiary standard to § 158.12 claims, 23 CIT at 6, 35 F.Supp.2d at 946,

■ In *Saab II*, the importer Saab attempted to meet this evidentiary standard by providing the Court with short descriptions of each vehicle part or component that was allegedly defective. 28 CIT at ——, 306 F.Supp.2d at 1283. The Court again found these insufficient because they were "not detailed enough for anyone to ascertain whether the alleged defects existed at the time of importation." *Id.* at ——, 306 F.Supp.2d at 1285. The Federal Circuit affirmed, and elaborated on the requirement that the evidence needed to prove defects existed at the time of importation be independently verifiable.[9] *See Saab III*, 434 F.3d at 1374–75. In light of these precedents, Volkswagen's brief descriptions for each repair are insufficient to permit an objective fact-finder to conclude by a preponderance of the evidence that the claimed defects existed at the time of importation.

First, Volkswagen argues that repairs covered by certain warranties, classified by "claim-types," are evidence of defects existing at the time of importation.[10] It has therefore listed all repairs made pursuant to certain "included claim-types" in Exhibit A. Even if these warranties make it clear that Volkswagen would be reimbursed by the manufacturer only for actual manufacturing or design defects in the imported automobiles, still "it is not clear that all warranty repairs necessarily indicate damage that existed at the time of importation as required for an allowance under § 158.12." *Id.* at 1374; *accord Samsung*, 23 CIT at 8, 35 F.Supp.2d at 947 (holding that evidence of warranty that only covers repairs for defective merchandise is insufficient to prove § 158.12 claim without "additional, independent evidence to corroborate"). In other words, evidence of warranty claims alone is not sufficient without corroboration, even if the warran-

which is obviously a stricter standard than is currently applied in these cases. *See Fabil Mfg. Co.*, 237 F.3d at 1339 (holding that the elements of § 158.12 must be proven by a preponderance of the evidence). However, the language in the *Samsung* cases regarding sufficiency of evidence for § 158.12 claims has been adopted in later cases applying the preponderance of the evidence standard. The requirement of independent verification must be met in order to meet the preponderance of the evidence standard.

9. The *Saab III* court stated the following:

We conclude that although some repairs authorized under the various warranties may relate to damage that existed at the time of importation, they do not necessarily so relate. Saab's rigorous system for tracking and auditing warranty repair claims does not alter this result. That system, which involves specialized databases that allow Saab to track all vehicle repairs by VIN and uses three levels of audits to ensure that dealers are making only appropriate warranty claims, certainly increases one's confidence that Saab's warranty claims *in the aggregate* are generally reliable. Operating as it does, however, by

auditing a limited number of claims from a limited number of dealers, it provides somewhat less assurance that any *particular* warranty claim is valid. We acknowledge, of course, the probative value of the kind of statistical assurance that the auditing system provides, but conclude that our cases' emphasis on the need for specificity in allowance claims requires more than this kind of probabilistic evidence.

*Saab III*, 434 F.3d at 1374–75.

10. Volkswagen also argues that every repair that was made pursuant to a recall is, by definition, a repair of a design defect that constitutes damage that existed at the time of importation pursuant to § 158.12. *See* Pl.'s Br. 30. However, recall repairs are not "by definition" repairs of damage that existed at importation, because when the vehicle was ordered and imported, it may have been manufactured exactly to the construction specifications requested by Volkswagen. If this is the case, the vehicle was not damaged at the time of importation. Thus, the Court cannot conclude simply from the evidence before it that repairs done pursuant to a recall constitute evidence of damage that existed at the time of importation.

ty only covers repairs for design and manufacturing defects.[11]

Second, Volkswagen discusses the descriptions it has provided of each repair. The short descriptions in Exhibit A provide slightly more detail than Saab's brief descriptions of repaired parts; however, as Volkswagen recognizes, they are still insufficient to make a § 158.12 claim. *See* Pl.'s Br. 20. For example, VIN [ ][12] corresponds to the following description: "steering lock/cylinder; stiff (sticks, jams); replaced." This short statement does not give the Court or Customs enough objective, independent and recognizable information to determine wither the alleged defect existed at the time of importation. Volkswagen goes on to explain that the Court can further decipher the vehicle's damage code by looking at Exhibit B, the Damage Code Key, to find more information about the nature of the repair. According to Volkswagen, the Damage Code Key contains descriptions of "each defect in each part with detail sufficient to prove that it existed at importation." *Id.* 14. For VIN [ ], the relevant portion of the damage code is [ ]. When these [ ] are cross-referenced with the Damage Code Key, the Court finds the following statement: "Binding—All moving parts which stick, jam, are too tight, seized, locked, difficult to shift, rubbing, insufficient play, do not engage or disengage properly. Examples: Seized or scored pistons, door hinges." Ex. B 46. This language explains that this particular part was damaged at the time it was repaired, but it

certainly does nothing to demonstrate, with independent and verifiable evidence, that a defect existed at the time of importation.

Even the descriptions that use the word "defect," or similar words, are not adequate. VIN [ ][13] is described as "oe power antenna; electrical defects; replaced." In the Damage Code Key, this repair is further described as "Electrical malfunction—Malfunctions in the electrical or electronic system (where mechanical defects, corrosion or noise cannot be determined), such as an open or shorted electrical circuit or no current flow . . . Examples: Alternator not charging, incorrect indication, flasher inoperative[.]" This description explains that there was an electrical malfunction, but it does nothing to verify that the malfunction was caused by a defect that existed at importation. Volkswagen is asking the Court and Customs to assume that any repair listed in Exhibit A must be the result of a latent defect, but the evidence does not compel this conclusion. Volkswagen does label the repair as a "defect," but this description is merely conclusory. It does not allow an independent factfinder to conclude that this repair was necessary to remedy a defect that more likely than not *existed at the time of importation.*

**D. The Distinction between Port Repairs and Warranty Repairs**

In *Saab II*, the Court made a distinction between port repairs and warranty re-

---

**11.** Volkswagen argues that when evidence of a warranty is presented, it should be assumed that any repair of that vehicle within the warranty time period represents a defect that existed at the time of importation *in the absence of intervening events. See* Pl.'s Br. 22. This incorrectly shifts the burden to Customs to prove the existence of intervening events. The burden is undoubtedly on Volkswagen to prove the elements of its claim.

**12.** This VIN No. is found in the file in Exhibit A (Confidential) for Entry No. 110–1030393–9.

**13.** This VIN No. is found in the file in Exhibit A (Confidential) for Entry No. 110–1030393–9.

pairs. A "port repair" was performed "almost immediately after importation," so the Court was less concerned "that the repairs might have been made to remedy damage resulting from intervening circumstances." *Saab II*, 28 CIT at ——, 306 F.Supp.2d at 1287. Regarding port repairs, Saab met its burden of proof with its short, simple descriptions of the repaired part. On the other hand, a "warranty repair" is performed at some time after importation. When a repair is not performed at the time of importation, the claimant must provide more specific evidence as described above. *See Saab III*, 434 F.3d at 1374 (holding that in the absence of evidence of temporal proximity, claimant must provide more than warranty agreements and more specific descriptions).

In the present case, Volkswagen contends that all repairs made before the "in-service date" should be considered "port repairs." The Court will not adopt this sweeping generalization. The Court will not assume that any vehicle repaired before its "in-service date" was unlikely to be damaged due to intervening circumstances. If Volkswagen wished to alleviate the Court's concerns about intervening misuse or mishandling, Volkswagen should have (1) clearly identified the vehicle repairs that it likened to the "port repairs" in *Saab II*, and (2) demonstrated that the repairs were completed "immediately" after importation. It did not do this. All the repairs are lumped together in Exhibit A, and the import dates are not listed at all.[14]

### IV. CONCLUSION

Volkswagen used a categorical approach to attempt to prove that over 300,000 defects existed at the time of importation of certain entries. According to Volkswagen, it has provided Customs and the Court with a straightforward compilation of Volkswagen's defect claims. For any particular repair, if more description is needed, the Court and Customs need only turn to the Damage Code Key in Exhibit B (Confidential). However, this shortcut method is not sufficient to meet the burden set forth in *Saab III*. As discussed above, it requires the Court and Customs to make too many unfounded assumptions about whether any damage actually existed at the time of importation. Section 158.12 does permit an allowance for any defect that existed at the time of importation, even when the damage is discovered later. *See Saab III*, 434 F.3d at 1371. However, claimants must keep in mind that "[o]nce Customs has liquidated merchandise, it can be damaged through a number of causes, including misuse or mishandling. This makes it difficult, or in some cases impossible, to identify the root cause of the damage or defect." *Samsung*, 23 CIT at 8, 35 F.Supp.2d at 947. Volkswagen has failed to overcome this difficult task with the evidence it has submitted for trial in this case.[15]

For the foregoing reasons, judgment will be entered in favor of the defendant.

### JUDGMENT

Upon consideration of Plaintiff Volkswagen of America, Inc.'s Brief Demon-

---

**14.** In its Reply Brief, Volkswagen attached a list of the import dates for each entry. This last-minute addition does not help Volkswagen to sufficiently identify, in a manner that is readable by the Court, which repairs that it considered "port repairs" because they were completed immediately after importa-

tion. Therefore, Volkswagen has failed to meet its burden of proof.

**15.** Because Volkswagen has failed to prove that the damage at issue existed at the time of importation, the Court need not address the question of proving the value of that damage.

strating that its Additional Evidence Submitted For Trial Herewith Is Sufficient to Prove An Allowance for Defects, Defendant United States' Memorandum in Opposition to Plaintiff's Brief, Plaintiff's Reply Brief, and all accompanying papers, and upon due deliberation, it is hereby:

**ORDERED, ADJUDGED AND DECREED** that the Court lacks subject matter jurisdiction over repairs performed after the date of Volkswagen's protests; and it is further

**ORDERED, ADJUDGED AND DECREED** that, as to the remaining repairs, judgment is entered for Defendant.

**IT IS SO ORDERED.**